# McCreary, *et al.* v. Jackson Lumber Co.

## *Ejectment.*

(Decided Feb. 26, 1907.   Rehearing denied June 30, 1910.   53 So. 103.)

1. *Ejectment.*—Where a plaintiff in ejectment relies on title by adverse possession, such plaintiff has the burden of showing a legal title by adverse possession.

2. *Adverse Possession; Evidence.*—Where a witness testified that he knew a third person under whom plaintiff in ejectment claimed, that he remembered that such person bought some land, that he went on the land with such person once and traced one boundary line and remained there one day, that the land was timber land and that such third person made a trade with another about keeping trespassers off the land, such testimony did not show such adverse possession as would start or continue the running of the statute of limitations.

[McCreary, et al. v. Jackson Lumber Co.]

3. *Appeal and Error; Harmless Error; Evidence.*—Where the result as to the judgment would not have been different had the additional evidence offered by the defeated party been admitted, and all the evidence given by the successful party against the objection of the defeated party been excluded, the rulings on the evidence are without prejudice.

APPEAL from Covington Circuit Court.

Heard before Hon. H. A. PEARCE.

Action by Ida McCreary and others in ejectment against the Jackson Lumber Company. Judgment for defendant and plaintiffs appeal. Affirmed.

JAMES F. JONES and J. M. CHILTON, for appellant. The court erred in admitting the Seagler deed, as it was not executed according to law. (Sec. 1266, Code 1852) and was deficient in description.—*Baron v. Baron*, 122 Ala. 204; *Goodwin v. Foreman*, 114 Ala. 489; *Webb v. Elyton L. Co.*, 105 Ala. 471, and cases cited. The question in this case as to whether either had such possession as would support or defeat the action is for the jury.—*Zundell v. Baldwin*, 114 Ala. 328. The title acquired by adverse possession descends, and the heirs may enforce it by ejectment.—*Hause v. Caperton*, 87 Ala. 285. When the lands were conveyed to the present defendant, they were held adversely by the plaintiff, and hence, defendant's deeds were void as to plaintiff. *Anniston C. L. Co. v. Edmundson*, 127 Ala. 445. A sufficient holding was shown to constitute adverse possession.—*Brand v. U. S. Car Co.*, 128 Ala. 579.

W. O. MULKEY, for appellee. The result would not have been different had the court admitted the evidence offered by the plaintiff and excluded the evidence offered by the defendant to which the plaintiffs objected, and hence, no injury could intervene and as all the assignments of error are based upon the court's action as to evidence, the cause should be affirmed.

MAYFIELD, J.—This is the third appeal in this case. See former decisions: 137 Ala. 278, 34 South. 850; 148 Ala. 247, 41 South. 822. The former opinions sufficiently state the facts necessary to an understanding of the questions for decision on this appeal. The case was reversed, on the first appeal, on the ground that the general affirmative charge should have been given in favor of the defendant.

On the second trial, the trial court gave the affirmative charge for defendant, and on the second appeal the case was reversed, on the sole ground of additional testimony of a witness named Morrow. The ground of reversal was stated in that opinion (148 Ala. 250, 41 South. 823), as follows: "One Morrow does testify that 'A. F. Jackson owned and was in possession of said N. E. ¼ of section 36, township 1, range 18, from the time he bought it from W. F. Donaldson until he sold it to John Finley, about the year 1882, a period of eight years. It is true that the witness, in detailing the possessory acts of Jackson, did not enumerate sufficient acts to show actual possession; but he nowhere stated that these were the only possessory acts, and, having previously testified to the collective fact that Jackson was in possession, it became a question for the determination of the jury as to whether Jackson was in the actual possession of the land when he conveyed it to Finley, the ancestor of the plaintiffs. If he was, the plaintiffs made out a prima facie case."

The witness Morrow was examined on interrogatories on the second trial; but on this trial he was examined ore tenus, and testified fully on the direct examination, and on cross and rebuttal. This examination was evidently for the purpose of seeing if his testimony, in connection with the other, would make out a prima facie case under the former decisions. His testi-

mony on this trial was as follows: "I knew A. F. Jackson in his lifetime. I knew him from the time I could first recollect. My father gave me to him when I was about 9 months old, and I lived with him until I was 21 years old. He was my uncle. I lived with him when he resided in Crenshaw county. I remember his buying some land from a man named Donaldson. I went on this piece of land with Mr. Jackson once, one time. We got there one evening, and left the next day evening. We just went on the land, and walked over it a little. We did not look out any lines, not in particular. We traced one line, and we remained there on the land one day.

Plaintiffs here asked the witness the following question: "Did you hear Mr. Jackson say that that land was his, while you were on it?" Defendant objected to this question, and to the witness answering it, which objection was sustained by the court, and to this ruling of the court plaintiffs duly and legally excepted.

Witness further testified: "I don't remember what part of the county it was where we went to that land. I think it was near Natural Bridges. We were living at the Atkins old mill at that time. I don't remember how far it was from this land. I don't remember that it was section 36. There was one little house on it, and about two acres cleared around it. Mr. Jackson in my presence employed a man by the name of Williams to look after the land for him, to keep trespassers off it. That was the land he bought from Mr. Donaldson. I don't remember Mr. Williams' given name. We lived about two years at the place we were living when we went on the land, two years in Covington county. We went from there to Coffee county, and from Coffee county we went back to Covington county, to a place near Loango. I remember that Mr. Jackson sold the land to Mr. Finley, Mr. John Finley. He was the father of plaintiffs. I

don't know that Mr. Jackson ever done anything more after that time. That was timber land. It was all timber, except a little patch on it—pine timber. It was valuable principally for the timber that was growing on it. In the condition the land was in at that time, it could not have been put to any other use than to keep trespassers off of it, and still preserve the timber on it."

On cross-examination this witness continued his testimony as follows: "The land I have been speaking of would have been good for farming, if it had been cleared up. I mean to say that it was timbered land at that time. I don't remember what time it was that me and Mr. Jackson went over this land. At that time Mr. Jackson lived near the Atkins old mill on the river. That was 10 or 12 miles northeast of this place, towards Rose Hill. I only went there with Mr. Jackson one time. I never knew of Jackson going but one time. He said he was going; but I don't know. I could not tell. 1 don't know whether it was the land involved in this suit or not. He did not spend the night on the land the time I went there with him. He just went across some land he said he had bought from Donaldson, and we went to a neighbor's house and spent the night. I heard him make a trade with Mr. Williams about keeping trespassers off the land. I don't know what land it was, and I don't know whether he kept them off or not. What I have testified to is all I know about any claim of possession he had to the land. I say that he sold it to Finley. I heard him say that he did. I was with him when he sold the land. He was living near Loango when he sold the land. That was some distance from the land; about 12 or 15 miles from this place. Loango is 12 or 15 miles west of Andalusia."

On redirect examination the plaintiffs asked the witness the following question: "While Mr. Jackson was there, did he claim to own and be in possession of that land?" Defendant objected to this question, and to the witness answering it, which objection was sustained by the court, and to this ruling of the court plaintiffs duly and legally excepted. Plaintiffs then asked this witness the following question: "While you were living down there, did Mr. Jackson claim to be in possession of this land?" Defendant objected to this question, and to the witness answering it, which objection the court sustained, and to this ruling of the court plaintiff duly and legally excepted. Said witness further testified: "While we were living down there, and at other times and places, Mr. Jackson claimed to own that land. While we were living down there at that old mill, he claimed to own the land. After he came up here, and was selling it to Mr. Finley, he claimed to own it."

On recross-examination he stated: "That is where he claimed to own it, while he was living at Loango; while he was living over here. These were all the places he claimed to own it. I heard him make the claim while he was there, and at no other places."

In conclusion, on redirect examination, this witness testified as follows: "Whenever he talked about that land, after he bought it from Donaldson, he claimed to own it. He claimed to own the land after he bought it from Donaldson. I don't remember the years we were down there. I don't remember whether it was in 1874 or 1876. It was about five or six years before he sold it to Mr. Finley.

When the facts are stated, upon which he is shown to base his opinion and conclusion as to the possession of the lands by Jackson, it clearly and conclusively ap-

pears that there was no such adverse possession as could start, or continue running, the statute of limitations as to the lands in questions. This evidence, standing alone, or in connection with all the other evidence, does not show, or tend to show, adverse possession of Donaldson, Jackson, or plaintiff, or of any person through whom they claim title, for 10 years, such as to ripen into title sufficient to support ejectment; and there was no sufficient muniment of title to support the action, as this court has decided, it follows that the plaintiff, upon whom rested the burden of proof to show a legal title, must fail, and that the court properly gave the affirmative charge for the defendant. The result would not, and should not, have been different, had the court allowed all the evidence offered by plaintiff, and excluded all that allowed to defendant over the plaintiff's objections.

The plaintiff having failed to show title, it is unnecessary to pass upon the questions as to defendant's title. We do not say there was error in any of the rulings of the trial court; but, if there was, it was clearly without injury to appellants, and will not authorize a reversal of the judgment.

It is true that there is other evidence in this record than was in those on former appeals; but, standing alone, or in connection with all the other, it falls far short of proving, or even tending to prove, an open, notorious, continuous, adverse possession of the lands for 10 years. It does not tend to show that the possession was continuous; but in this respect the evidence as to possession contributes to its own invalidity, in that it affirmatively shows that the possession or claim—whatever it may have been—was broken at stated times, and was never continuous at any one period for the statutory period of 10 years, which was necessary to support

the action against this defendant, claiming as it was in this case. In other words, the plaintiffs, in order to recover, must show title acquired by adverse possession, in themselves or in those under whom they claim—such a continuous, adverse possession, for 10 consecutive years, as would divest the legal title out of the true owner, who, in the absence of proof to the contrary, must be presumed to have been in possession, and vest it in themselves, or in those under whom they claim.

The evidence did not show or justify a reasonable inference that such adverse possession was ever had of the land in question. We are of the opinion that the evidence conclusively disproves such possession, that the court properly gave the affirmative charge for defendant, and that the only judgment was rendered that should have been rendered.

Affirmed.

SIMPSON, ANDERSON, SAYRE, and EVANS, JJ., concur.

(Decided June 9, 1910.   Rehearing denied June 30, 1910.   52 So. 955.)