# WESLEY L. PAGE v. ED. A. SMITH.

## (157 N. W. 477.)

**Action to quiet title — adverse possession — fee holder — title established — facts sufficient.**

1. Action to quiet title based on adverse possession against fee-title holder Smith and others. *Held:* Facts are insufficient to establish a title under adverse possession as required by § 5471, Comp. Laws 1913.

---

Note.—That a title acquired by adverse possession may be quieted and the cloud on the same removed in an action by the party holding such adverse possession is set forth on page 506 of note in 46 L.R.A. (N.S.) 487, on the use of possessory title as a weapon of defense.

The applicability of the statute of limitations to an action to remove cloud on

33 N. D.—24.

**Wild land — uncultivated — uninclosed and unimproved — hay on — occasional or continuous cutting — proof of — land — adversely held — insufficient to establish.**

2. Proof of occasional or continuous cutting of hay upon wild, uncultivated, uninclosed, and unimproved prairie land is not of itself sufficient to establish that the land is held adversely to the fee owner of record.

**Occupancy — insufficient — taxes — payment of — fee — record holder — title.**

3. Payment of taxes with such insufficient occupancy does not operate to devest title of the record holder of the fee.

**Fee holder — title — quieted in — mortgage indebtedness —taxes — original mortgagee — paid by — accounting — use and occupancy — value — offset — costs — case remanding.**

4. Title is quieted in the fee holder, Smith, upon condition that he pay the mortgage indebtedness, including interest, also taxes paid by the original mortgagee and assigns and interest thereon, and provided also that an accounting thereon may be had upon the value of the use and occupation of the premises during Smith's ownership to date of judgment as an offset against such taxes and mortgage indebtedness. Costs to appellant. Case remanded for further proceedings if necessary.

Opinion filed March 15, 1916. Rehearing denied April 15, 1916.

Appeal from District Court Dickey County, *Allen,* J.

Reversed and a conditional judgment directed for defendant Smith with accounting permitted.

*Youker & Perry,* for appellant.

The foreclosure of a real estate mortgage by advertisement, by an assignee, where his assignment has not been duly recorded, is void. Hickey v. Richards, 3 Dak. 345, 20 N. W. 428; Morris v. McKnight, 1 N. D. 266, 47 N. W. 375.

A foreign corporation, living in another state and claiming construc-

title is discussed in the note in 29 L.R.A. (N.S.) 930, referred to herein in the opinion on rehearing.

The general subject of what is essential to adverse possession is discussed in notes in 28 Am. St. Rep. 158, and 88 Am. St. Rep. 701.

On what is sufficient to sustain color of title and what amounts thereto, see notes in 14 Am. Dec. 580, and 88 Am. St. Rep. 701.

As to whether color of title is necessary to adverse possession, see note in 14 Am. Dec. 764.

The necessity of color of title when not expressly made a condition by statute to found title by adverse possession is also discussed in note in 15 L.R.A. (N.S.) 1178.

tive possession of real estate only by virtue of a sheriff's deed, based on a void foreclosure, and not coupled with any act of continuous, open, notorious, and hostile occupancy of a tract of wild, vacant, and unimproved lands, cannot be said to be within the contemplation of the statute granting relief in actions to quiet title. Enderlin Invest. Co. v. Nordhagen, 18 N. D. 517, 123 N. W. 390; J. B. Streeter Jr. Co. v. Fredrickson, 11 N. D. 300, 91 N. W. 692; Timmons v. Kidwell, 138 Ill. 13, 27 N. E. 756; Dawley v. Van Court, 21 Ill. 460; Fell v. Cessford, 26 Ill. 525; Jayne v. Gregg, 42 Ill. 413; Stiles v. Granger, 17 N. D. 502, 117 N. W. 777; Krueger v. Market, 124 Minn. 393, 145 N. W. 30.

Payment of taxes under color of title does not of itself constitute possession. In this case the taxes for some years during the statutory period were paid by strangers. Cornell University v. Mead, 80 Wis. 387, 49 N. W. 815; Miller v. Davis, 106 Mich. 300, 64 N. W. 338; Joy v. Midland State Bank, 26 S. D. 244, 128 N. W. 147; Illinois Steel Co. v. Budzisz, 115 Wis. 68, 90 N. W. 1019.

In order to work disseisin and maintain adverse possession, such possession must be open, continuous, notorious, distinct, hostile, and visible. Paldi v. Paldi, 95 Mich. 410, 54 N. W. 903; 1 Cyc. 990–992, and citations; Jasperson v. Scharnikow, 15 L.R.A.(N.S.) 1178, note; Markusen v. Mortensen, 105 Minn. 10, 116 N. W. 1021; Hafner v. Chase, 146 Iowa, 231, 124 N. W. 1087; Lanning v. Musser, 88 Neb. 418, 129 N. W. 1022; Bazille v. Murray, 40 Minn. 48, 41 N. W. 238; Forey v. Bigelow, 56 Iowa, 381, 9 N. W. 313; Haseltine v. Mosher, 51 Wis. 443, 8 N. W. 273; Whittlesey v. Hoppenyan, 72 Wis. 140, 39 N. W. 355.

The possession must be of such a character as will raise the presumption of notice to the world that the right of the true owner is invaded intentionally, and so patent that the owner could not be deceived. Murphy v. Doyle, 37 Minn. 113, 33 N. W. 220; Chabert v. Russell, 109 Mich. 571, 67 N. W. 902; Grube v. Wells, 34 Iowa, 148; Proprietors of Kennebec Purchase v. Springer, 4 Mass. 416, 3 Am. Dec. 227; St. Louis, A. & T. H. R. Co. v. Nugent, 152 Ill. 119, 39 N. E. 263; Murray v. Hudson, 65 Mich. 670, 32 N. W. 889; Glencoe v. Wadsworth, 48 Minn. 402, 51 N. W. 377.

*Webb & Brouillard* and *E. E. Cassels,* for respondent.

When an adverse possession of real property has continued for a sufficient length of time so that the remedies of the owner to recover the land have become barred by the statute of limitations, the title to such premises is devested, and becomes vested in the adverse occupant. Sprecker v. Wakeley, 11 Wis. 433; Rogers v. Benton, 39 Minn. 39, 12 Am. St. Rep. 613, 38 N. W. 765; Brown, Limitations & Adverse Possessions, §§ 1–4, and cases cited in notes to § 4; Campbell v. Holt, 115 U. S. 620, 29 L. ed. 483, 6 Sup. Ct. Rep. 209; Chapin v. Freeland, 142 Mass. 383, 56 Am. Rep. 701, 8 N. E. 128.

The appellant having denied respondent's title and alleged title in himself by way of counterclaim, as in this action, he thereby becomes, as to his claim of title, the plaintiff. Backus v. Burke, 63 Minn. 272, 65 N. W. 459; Jones, Mortg. 6th ed. §§ 715, 716 and cases cited; Nash v. Northwest Land Co. 15 N. D. 566, 108 N. W. 792; Mears v. Somers Land Co. 18 N. D. 384, 121 N. W. 916; Houts v. Hoyne, 14 S. D. 176, 84 N. W. 773.

Where a man knowingly, but passively, suffers another to purchase and expend money on land under an erroneous opinion and belief of title, without making known his own claim, he will not be permitted to exercise his legal rights against such person. He is estopped to make an adverse claim. Shelby v. Bowden, 16 S. D. 531, 94 N. W. 416; Wampol v. Kountz, 14 S. D. 334, 86 Am. St. Rep. 765, 85 N. W. 595; Murphy v. Dafoe, 18 S. D. 42, 99 N. W. 86; Dimond v. Manheim, 61 Minn. 178, 63 N. W. 495; Kirk v. Hamilton, 102 U. S. 68, 26 L. ed. 79; Close v. Glenwood Cemetery, 107 U. S. 466, 27 L. ed. 408; State ex rel. Miller v. Graham, 21 Neb. 329, 32 N. W. 142; Gillespie v. Sawyer, 15 Neb. 536, 19 N. W. 449; Simmons v. Burlington, C. R. & N. R. Co. 159 U. S. 278, 40 L. ed. 150, 16 Sup. Ct. Rep. 1; Kenny v. McKenzie, 25 S. D. 485, 49 L.R.A.(N.S.) 782, 127 N. W. 597; Pom. Eq. Jur. § 965.

This particular effect or condition arises from motives of equity and fair dealing to create and vest opposing rights in the party who obtains the benefit of the estoppel. Pom. Eq. Jur. §§ 804, 965; Horne v. Coe, 51 N. H. 287, 12 Am. Rep. 111; Murphy v. Dafoe, 18 S. D. 42, 99 N. W. 86; Gillespie v. Sawyer, 15 Neb. 536, 19 N. W. 449; Kirk v. Hamilton, 102 U. S. 68, 26 L. ed. 79; Wendell v. Van Rensselaer, 1 Johns. Ch. 344; Kenny v. McKenzie, 25 S. D. 485, 49 L.R.A. (N.S.) 782, 127 N. W. 597.

Goss, J. Plaintiff brings action to quiet title, claiming ownership in fee simple to a quarter section of land in Dickey county. Besides defendant Ed. A. Smith and wife several mortgagees and assigns are made defendants. Smith answering asserts ownership in fee simple and asks affirmative relief. A reply was interposed deraigning title in plaintiff through foreclosure of a mortgage given by one Conser for $350 to James Reckitt, Fannie Saunders, and Ashby Varley Saunders. That said mortgage had been foreclosed by advertisement and sale in 1892 by the Colonial & United States Mortgage Company of England as assignee of the mortgage, with a certificate on foreclosure issued to said mortgage company as purchaser on sale. That a sheriff's deed had been issued thereon September 20, 1899, no redemption having been made. The sheriff's deed ran to said mortgage company as grantee. That it immediately went into possession thereunder. That through mesne conveyances plaintiff subsequently became the owner of said land. That said mortgage company and its grantees have ever since 1899 been in the open, notorious, and adverse possession of said premises, and has "held for more than ten years adverse to defendant's alleged claims, and that the alleged cause of action set forth in defendant's answer, if any, accrued more than ten years prior to the commencement of this action." The trial court found for the plaintiff, and defendant Smith appeals, demanding a trial *de novo*.

The issue is mainly one of fact concerning adverse possession under § 5471, Comp. Laws 1913. In brief the facts are that Eli P. Conser made final proof and received receiver's receipt therefor upon the land in question November 3, 1883, and on November 10th following Conser and wife mortgaged the premises for $350 to James Reckitt, Fannie Saunders, and Ashby Varley Saunders, which mortgage, according to the abstract in evidence, contained a power of sale and was recorded soon after given. Three years later, or March 22, 1886, Conser and wife mortgaged said premises to Katie M. Smith, defendant's wife, for $100, which mortgage has never been satisfied of record. A year later and on January 4, 1887, Conser and wife conveyed said premises by warranty deed for a consideration of $170.35 to defendant Ed. A. Smith. June 4, 1892, a sheriff's certificate of sale on foreclosure was issued to the Colonial & United States Mortgage Company, Ltd., as purchaser in a foreclosure made by that company as assignee of said

$350 mortgage, but which assignment, if any existed, has never been recorded. Upon the sheriff's certificate issued in 1892 a sheriff's deed on foreclosure was obtained in 1899, running to said mortgage company as grantee therein. In August, 1902, said mortgage company grantee conveyed by warranty deed to M. W. Hill, in performance of a contract of purchase entered into some two years before. The same month Hill and wife convey to the Sioux Valley State Bank of Iowa, which in turn deeds to the Bailey State Bank of Iowa, which transfers to Joseph Knox, who mortgages back to the bank May 16, 1911, and subsequently deeds in May, 1912, to this plaintiff, Wesley L. Page, subject to the mortgage to the bank. In 1913 plaintiff brings this action. So far as the record title is concerned defendant Smith is the holder thereof, the foreclosure being void under Hebden v. Bina, 17 N. D. 235, 138 Am. St. Rep. 700, 116 N. W. 85, and earlier cases, including Higbee v. Daeley, 15 N. D. 339, 109 N. W. 318, and the recent decision of D. S. B. Johnston Land Co. v. Mitchell, 29 N. D. 510, 151 N. W. 23, and plaintiff's title if absolute must be derived from the adverse possession pleaded as ripening into ownership during the interval since Smith has been the record owner. Amplifying the facts concerning this possession, the following is shown from the record: That the foreign mortgage company maintained an office in St. Paul in charge of one Eastman as manager; that the foreclosure instituted in 1892 was noticed by publication in a newspaper of the defendant Smith; that later, upon examining the record, Smith ascertained that there was no assignment of the mortgage from the mortgagees to the mortgage company purporting to foreclose as assignee of the mortgage. Subsequently during the purported year of redemption Smith went to said mortgage company's nearest local office in St. Paul and discussed with Eastman the validity of the foreclosure, informing him that their assignment was not of record, and "that if he could give me (Smith) an assignment of this mortgage, and would get it so I could put it on record, and would give me a satisfaction or get a satisfaction from Reckitt and Saunders, I was ready to pay up the mortgage with interest and all taxes. He objected to that because they would lose the costs of the foreclosure. He wanted me to pay that also. And while we were having conversation another man came into the office, and the case was stated to him,—he appeared to be connected with the office, I

don't remember his name,—and after the case had been stated to him he said to Eastman: 'If what Smith states is true perhaps you would better let him pay up, but I would like to look it up a little further before giving him a definite answer.' Eastman finally said to me that 'if I find your statements are true and correct, and the situation as you say it is, we will try and get this assignment and fix up the matter as you suggest;' and he mentioned the taxes, and said that he personally paid the taxes, and I told him any taxes he paid I would repay him or any that he had to pay in the future,—if he had an assignment that he would probably be held to be still standing as mortgagee and he had a right to pay the taxes, and that I would repay him. And he said to me then if I would deposit the money with him he would give me a receipt for it. I told him that if he had any right to the money on the mortgage belonging to the Colonial company and was willing to give me a receipt, he might as well give me a satisfaction; that I didn't know he had any right to the money, and that I would pay it just as soon as he could show me he had a right to it. Sometime about a year afterwards I wrote them and asked what they had found out about it and got a letter, a very short letter, to the effect that they were not prepared to adjust the matter. I think that was somewhere about a year afterwards." Meanwhile six years elapsed before a deed was taken on the purported foreclosure prior to which time Hill had purchased the land. During all these years, and down until 1907, the land remained wild, unimproved, uncultivated prairie, unfenced and abandoned so far as visible evidences thereon of ownership and occupancy were concerned. During several years of this time the hay had been cut by a tenant of Hill's who had land adjoining or by others. The taxes had been paid by the mortgage company down to the time of Hill's purchase and thereafter by subsequent grantees. Smith did not concern himself about the land, first visiting it in 1908. In 1907 the bank, by subletting, caused 70 acres to be broken on this tract, and the following year 50 acres and in 1909 25 acres more. The land has been cropped, improved, and occupied adversely to Smith since 1907. But the evidence concerning occupancy and possession prior to that date affirmatively shows nonoccupancy, and that continuously from the time of the attempted foreclosure up to 1907 there was nothing in that direction upon which can be predicated that actual, open, continuous, ad-

verse, and undisputed possession necessary under § 5471, Comp. Laws 1913, to ripen occupancy under claim of title into a title by operation of that statute of limitations, in such an occupant, who for a period of ten years shall have paid all taxes levied thereon.   The facts are closely parallel with those in D. S. B. Johnston Land Co. v. Mitchell, 29 N. D. 510, 151 N. W. 23, from page 528 of which we quote: "It is undisputed that the land was wild, prairie land without a vestige of improvement, and at the most it is merely contended that plaintiff's possession thereof was constructive only and such as it would obtain by reason of the fact that on a few occasions it entered into leases with third persons authorizing them to cut hay thereon.   Such acts fall far short of constituting actual, open, and notorious possession sufficient to set the champerty statute in motion.   This is decided by this court in State Finance Co. v. Beck, 15 N. D. 374, 109 N. W. 357, the syllabus reading: 'The occasional cutting and removal of hay from unoccupied lands under a permit from one claiming title adverse to the plaintiff's grantor is not sufficient to constitute adverse possession so as to avoid plaintiff's deed for maintenance.' . . .   It will be seen by an examination of the opinions that such cases [contrary holdings on fact] are predicated upon actual, open, and notorious possession. The attempted foreclosure of the commission mortgage being ineffectual to convey the legal title to the plaintiff, . . . it follows of course that Harrington, the defendants' grantor, and not this plaintiff, had the constructive possession of the premises which flowed from his legal title [citing authorities].   In the latter cases it was correctly held that unimproved and unoccupied land is deemed to be in the possession of the holder of the legal title, and not in the holder of the title under void judicial proceedings."   See also note in 15 L.R.A. (N.S.) 1178, at page 1189, et seq.   It is true that one of the officers of the mortgage company attempting this foreclosure has testified that "the company went into possession of the property on completion of foreclosure proceedings in 1892."   But the witness must have had reference to constructive, and not actual, possession, as all of the witnesses familiar with the land testify to the contrary so far as the facts of possession and occupancy are concerned, and the witness referred to was not cross-examined.   And the testimony of the witness Cook, for thirty years a resident within a mile of this land, is convincing to the contrary, and

is in entire harmony with the facts and practically in agreement with plaintiff's own witnesses establishing an entire want of actual and open occupancy and possession by anyone. As but six years has elapsed between the time when the statute was set in motion and this suit was commenced, payment of taxes for the earlier period is immaterial so far as title based on possession and payment of taxes is concerned. Plaintiff must recover upon the strength of his own title, the basis of which must be at least ten years of actual, open, and notorious adverse possession coupled with payment of taxes thereunder for ten years. He has no such basis in the proof. Rather the weakness of his title is plainly apparent. Such being the case, he can recover only to the extent of having determined his lien as equitable assignee of the mortgage and for taxes paid.

The legal title and ownership of the tract is in Ed. A. Smith, the defendant, and has been at all times since January 4, 1887, of which fact the mortgage company and assigns, including this plaintiff, have had constructive notice upon the recording of said deed March 27, 1887.

The authorities cited in respondent's brief are not in point under the proof. The trial court perhaps was misled, as respondents apparently have been, in deeming the facts parallel with those of Mears v. Somers Land Co. 18 N. D. 384, 121 N. W. 916, but that precedent should be distinguished on facts from the case at bar. That decision is based not alone upon the statute in question, but upon the finding that such occupancy as was had by the mortgagees in possession was "with the full knowledge and implied acquiescence" of the title holder.

"Furthermore they had actual notice before they purchased that the Somers Land Company claimed to own said land, as the correspondence in evidence discloses. Not only this, but they in fact negotiated with said company for the purchase of such land, and actually accepted and offered to purchase the same upon specified terms, which they afterwards repudiated. Such correspondence was, we think, clearly admissible. In the light of these facts, plaintiffs stand in no more favorable position in a court of equity than would their grantors," who had actual notice and had impliedly acquiesced in the possession for years of the mortgagees. Then again: "It was not necessary that Russell and the land company should have been in the open, visible, and notorious possession of the land sufficient to raise a presumption of

notice to Mears and wife [record owners] that their rights were invaded by them with a purpose to assert an adverse claim of title thereto, as the evidence clearly discloses that Mears and wife, by their conduct, must have had actual knowledge of appellants' hostile claim." And for the same reasons Nash v. Northwest Land Co. 15 N. D. 566, 108 N. W. 792, is not an authority in this case, as disclosed by the following from the opinion: "Their silence is explainable, consistently with honest and intelligent conduct on their part, only on the theory that they consented to and acquiesced in the possession on the part of the mortgagee and its successors. The authorities therefore hold that consent will be implied under such circumstances." 15 N. D. 573.

Respondents claim an estoppel against Smith because "he failed and neglected to pay the principal, interest, and taxes, or to assert any right to any of the rentals, or to exercise any of the rights of ownership. Such conduct on the part of the defendant clearly amounts to an abandonment, and precludes him from now recovering the same because of his own conduct." But none of the cases cited to sustain this doctrine hold mere nonaction in such respects to amount to estoppel under circumstances disclosed by the evidence. Defendant has testified to his efforts toward payment of the mortgage during the alleged period of redemption. In fact there was no period of redemption because the foreclosure proceedings were void *ab initio*. The attempt to foreclose was ascertained by Smith to have been without either an assignment or any proof of ownership of record, or in fact in the mortgage at that time. The mortgage was owned by parties in England, and was only one item of $24,000 of mortgages drawn to these mortgagees, and negotiated through the agency of the mortgage company. In fact, under the proof as made, the mortgage company has not even yet produced an assignment. Instead it relies only on circumstantial evidence and oral testimony explanatory of its books to establish that it ever became the equitable owner of the mortgage. And such proof was only made after this suit was pending. This perhaps is the reason Eastman wrote Smith that he had not been able to adjust matters so as to receive his money, being aware that he had been ready to pay. Besides, the company had full notice of the invalidity of the foreclosure, and was told by Smith that he could not, with business prudence, in safety make payment of this mortgage to them as purported claimants thereof, without taking risks of their ownership of the mort-

gage. An assignee of a mortgage demanding payment of it certainly has the burden of showing ownership of it to the inquiring landowner who has assumed its payment. To fail to exact such proof precludes a plea of payment by the mortgagor if made to an unauthorized person though under circumstances identical with those confronting Smith at the time of his conversation with Eastman. Trubel v. Sandberg, 29 N. D. 378, 150 N. W. 928. Defendant Smith certainly did all that the law required toward ascertaining to whom to make payment of this mortgage. The mortgagee owed him some duty in that respect. If he was negligent it was more so. That it actually asserted no title under its foreclosure is apparent from the fact that it took no sheriff's deed for six years after sale, and that it knew the foreclosure to be invalid. Of this and the fact that no assignment was of record and that the foreclosure was void, Hill and all subsequent purchasers had constructive notice, and are in no better position than was the mortgage company. As to payment of taxes that alone does not estop the owner from asserting title where such payment is not accompanied with the statutory actual, open, adverse, and undisputed possession of the party paying them. Nor did Smith's failure to exercise any rights of ownership alone preclude him from still asserting it. When he became owner this land was unoccupied, wild, and unimproved. He certainly had the legal right to let it lie in that condition if he saw fit. Smith is not estopped from asserting his title simply by his nonaction.

Both parties have asked for general equitable relief. But both have staked their recovery upon an issue of title. It would be inequitable to quiet title in Smith without requiring the payment of this mortgage, interest, and taxes paid during these many years. But it would be equally unjust to Smith to require such payment of him without requiring plaintiff in possession to account for the value of the use and occupation throughout said years. If he should be paid this mortgage, interest, and taxes he should account for the value of the occupancy whether by him or his assignors, inclusive of the original mortgage. None of these issues were raised in the pleadings; nor is there sufficient proof upon which to make an equitable final disposition of the case in this court. The cause is therefore remanded with direction to quiet title. in Smith to said premises, subject to the rights of the plaintiff and Smith to file additional pleadings and thereunder litigate the amount, if any, that defendant Smith should pay plaintiff Page as a

condition precedent to the entry of final judgment quieting title in Smith to said premises. Said amount is to be determined by the trial court by reference to the following items and matters, to wit: Defendant Smith must pay plaintiff the amount of said mortgage, $350, together with straight simple interest thereon at the mortgage rate from its date, November 10, 1883, to the date of entry of judgment herein, or for a term of approximately thirty-three years, without division of said term in the computation of interest. To this amount there shall be added the amount of all taxes paid, with interest. In the computation of taxes each year's tax shall be taken, together with 7 per cent interest per annum from the date of payment, to the date of entry of judgment, as one interest term; any taxes that may have been paid by plaintiff subsequent to the commencement of this action shall be included. That no costs shall be allowed or added to the mortgage because of the attempted foreclosure in 1892. That should plaintiff demand a recovery therefor, defendant Smith shall be charged with the value of any and all permanent improvements (but not inclusive of costs of plowing or breaking) placed upon said land. As against this aggregate amount found to be due in equity from the defendant to plaintiff, there shall be offset the value of the use and occupation of said premises according to the use made thereof as may be disclosed by the proof, should defendant Smith claim the same by pleadings and litigate said issue; the value of said use and occupation to cover the entire period of time during which the mortgage company or any of its assigns, including this plaintiff, may have realized any profit whatsoever out of said premises since Smith purchased them, to the effect that the plaintiff shall be charged therewith as an offset against any sum in equity due him from Smith. With this indication as to the relief that may be granted upon issues to be formulated, the cause is remanded. Conditioned further that upon Smith's depositing in district court or such bank as the court may direct, to abide the result of the accounting, the amount of said mortgage indebtedness and taxes to be paid by him, he shall be let into immediate possession of said premises. Appellant will recover costs on appeal and on trial, to be deducted from the amount necessary to be paid by him as a condition to entry of judgment quieting his title.

Judgment appealed from is ordered reversed.

## On Petition for Rehearing Filed April 15, 1916.

Goss, J.   In a petition for rehearing, plaintiff contends that § 7381, Comp. Laws 1913, bars defendant's recovery of judgment for title. That section reads: "An action for relief not hereinbefore provided for must be commenced within ten years after a cause of action shall have accrued." Plaintiff asserts that under the statute governing trials of equitable counterclaims in adverse claims suits, § 8153, Comp. Laws 1913, defendant is to be regarded as a plaintiff bringing this action and therefore barred from relief for not bringing suit within ten years from time his cause of action accrued. This statute reads: "A defendant interposing a counterclaim shall, for purposes of trial, be deemed plaintiff, and the plaintiff and codefendants against whom relief is sought shall be deemed defendants as to him."

Several answers can be made to plaintiff's contention. Neither this statute of limitations nor the practice statute as to equitable counterclaims can apply. If defendant is not barred by the adverse possession statutes, § 5471, as held in the main opinion, he is certainly not barred by the ten years statute, § 7381. To so hold would be to find no necessity for the former statute in such cases. Another conclusive answer is that defendant has "commenced" no action within the meaning and terms of § 7381. He has begun no action whatever, but so far as that statute is concerned is a defendant, and not within its terms. Nor does § 8153 regulative of trials in actions already brought purport to change the situation as to who must bring the suit to be within § 7381, the limitation statute. The statute governing trials expressly states that "for purposes of trial he (defendant) shall be deemed plaintiff." This excludes by necessary inference any conclusion that a defendant is to be deemed plaintiff for any other purpose than for "purposes of trial." This statute cannot supplement § 7381 in the manner contended for, even though the limitation statute as so supplemented could be held applicable.

Another answer to plaintiff's claim is that defendant Smith, the fee owner, may maintain an action to remove any cloud on his title, and no defense of outlawry as against such an action could be interposed. "A cloud upon a title must always continue to operate as such during the period of its existence; and as its effect upon the title is continuing, the

cause of action resting on the right of the owner to have it removed would seem to be continuing also and to be available at all times while the cloud remains." Cooper v. Rhea, 29 L.R.A.(N.S.) 930, and note (82 Kan. 109, 136 Am. St. Rep. 100, 107 Pac. 799, 20 Ann. Cas. 42).

Another reason for refusing application of § 7381 is that as to plaintiff, if otherwise available as a plea by him against defendant, he has not ten years' possession to set up against defendant's title. As to plaintiff, defendant is asserting his cause of action within less than ten years from the time defendant's cause of action for possession accrued by reason of plaintiff's occupancy, assuming possession of plaintiff's grantors could be tacked. 1907 was the earliest prior actual occupancy or possession of the premises that can be asserted by anyone other than Smith, and be within the facts. Until then defendant's legal title drew to him constructive possession, which was broken only by actual possession in 1907. No ten-year statute could have run as against defendant.

The contention for rehearing based on laches was sufficiently answered in the main opinion.

Rehearing is denied.