**GRANDIN v. GARDINER et al.**

No. 7413.

Supreme Court of North Dakota.

Feb. 23, 1954.

Q. R. Schulte, Stanley, for plaintiff and respondent.

Zuger & Zuger and C. L. Foster, Bismarck, for defendants and appellants.

MORRIS, Chief Justice.

This is a statutory action to determine adverse claims involving 120 acres of land in Mountrail County which was originally conveyed by United States patent to Laurits Mandrup Jensen on June 19, 1925, and described as the N ½ SW ¼ and the SW ¼ NW ¼ of Section 34, Township 157, Range 94. On February 18, 1937, the defendant Jensen conveyed to the defendant John W. Smith all the oil, gas, and other minerals in and under the land in question and on October 27, 1931, granted an easement for a gas pipe line to the Montana-Dakota Power Company. Jensen paid taxes on the land for the year 1926 but paid no taxes thereafter.

The land was sold for taxes and bid in by Mountrail County for the years 1927 to 1936 inclusive. On January 31, 1938, the county auditor of Mountrail County issued a notice of expiration of redemption giving notice that the real estate was, at the tax sale held on December 8, 1931, sold to the county and no redemption made from the sale and that unless a redemption be made within ninety days from the date of the notice a tax deed would be issued to the county. The description of the land and the amount required to redeem are set forth in the notice as follows:

| "Subdivision | Sec. or Lot | Town or Block | Range | Total Amount Necessary To Redeem |
|---|---|---|---|---|
| NSW, SWNW | 34 | 157 | 94 | 414.96." |

A tax deed executed in the name of and by the county auditor was issued to Mountrail County on May 23, 1938. On June 28, 1945, Mountrail County executed a tax deed to the defendant Fred Grandin for the sum of $120. On the same date that the deed was issued, a notice was also issued to Laurits Mandrup Jensen, White Earth, North Dakota, advising of the sale to Fred Grandin and notifying Jensen that the sale would become final at the expiration of thirty days unless redemption was made by paying $120. This notice was not delivered but was returned by the post office. After the expiration of thirty days the deed was delivered to Grandin, who, on February 16, 1949, deeded the property to his wife Caroline Grandin, the present plaintiff. The plaintiff later gave an oil and gas lease and two mineral deeds affecting this land but they are not important in this case.

The defendant Jensen has answered, denying the allegations of the complaint and setting forth his claim as owner of the land subject to his deed of the minerals to the defendant Smith and by way of counterclaim asks that title to the property be quieted in him, save and except as to the rights of Smith. Smith answers setting up the title of Jensen and his conveyance of the minerals to Smith and asks that the title to the minerals be quieted in the defendant Smith. The plaintiff replied to these answers setting up statutes of limitation and laches. Jensen and Smith appeal from a judgment in favor of the plaintiff.

The plaintiff's title, in so far as it is of record in the office of the register of deeds of Mountrail County, derives from the tax deed issued to Mountrail County on May 23, 1938, and the tax deed given by Mountrail County to plaintiff's husband, Fred

Grandin, on June 28, 1945. There is first placed in issue the validity of the tax deed proceedings. The appellants contend that the tax deed to the county was void because the purported notice of expiration of redemption issued by the county auditor, and upon which the validity of the deed to the county depends, did not comply with the statute and did not terminate the right of redemption of the owner, Laurits Mandrup Jensen. As to this contention the appellants must prevail.

The notice of expiration of redemption is defective in several particulars. It states the amount required to redeem in one lump sum. The tax sale was held on December 8, 1931, and was for 1930 taxes. The lump sum of $414.96 stated in the notice includes taxes from 1927 to 1936 inclusive. This is also stated in the tax deed from Mountrail County to Fred Grandin.

In Paragraph 6 of the syllabus in Fish v. France, 71 N.D. 499, 2 N.W.2d 537, 538, we said:

"Where land has been sold to the county at a tax sale because of failure to pay the taxes levied for the year 1934, and the county auditor proceeds to give notice of the expiration of the time of redemption, he is required to set forth in the notice the amount necessary to be paid in order to redeem from said tax sale; and in this amount he will include the amount for which the land was sold with penalty and interest, together with the amount of all subsequent taxes due and payable on said land subsequent to the sale, with penalty and interest; and where the county auditor, in addition to said amounts, includes alleged delinquent taxes which accrued prior to the year 1934, together with penalty and interest thereon, and the amount of all taxes is set forth in one sum so that the delinquent taxpayer is not able to determine therefrom the correct amount necessary to redeem, the notice of expiration of time for redemption is insufficient to support the issuance of a tax deed."

In this case the notice included in the lump sum required to redeem taxes levied for three years prior to 1930.

■ The notice of expiration of redemption was dated January 31, 1938, and in the lump sum stated as being necessary to redeem, taxes for the year 1936 were included. In a line of cases we have held that where a notice of expiration of the period of redemption is issued by the county auditor upon a tax certificate acquired by the county at a tax sale, the inclusion in a lump sum therein claimed to be due of taxes which have been delinquent for less than three years prior to the service of the notice renders the notice invalid and a tax deed issued thereon void. Loy, for Use and Benefit of Union Securities Co. v. Kessler, 76 N.D. 738, 39 N.W.2d 260; Knowlton v. Coye, 76 N.D. 478, 37 N.W.2d 343; McDonald v. Abraham, 75 N.D. 457, 28 N.W. 2d 582; Robertson v. Brown, 75 N.D. 109, 25 N.W.2d 781; Baeverstad v. Reynolds, 73 N.D. 603, 18 N.W.2d 20; Kelsch v. Miller, 73 N.D. 405, 15 N.W.2d 433, 155 A.L.R. 1186.

The defects in the notice of expiration of redemption clearly render it void. Consequently, the deed issued to Mountrail County is void, as is the tax deed from Mountrail County to Fred Grandin. He therefore had no title to convey to the plaintiff when he attempted to convey the property to her by warranty deed on February 16, 1949.

■ Not only was the tax deed to Mountrail County void because no lawful notice of expiration of redemption was given but it is void for another reason. The grantor named therein is M. L. Glarum, County Auditor of Mountrail County, and not the State of North Dakota, as the law requires. A tax deed to a county issued in the name of the county auditor rather than in the name of the state is void on its face. McDonald v. Abraham, 75 N.D. 457, 28 N. W.2d 582. Thus we have a claim of title originating in a tax deed which is void on its face but which, if it had been regular in form, would still be void because of the

failure of the tax deed proceedings to comply with the statute and terminate the right of redemption of the original owner. This deed was dated May 23, 1938, and recorded in the office of the register of deeds July 23, 1938.

The plaintiff and respondent herein claims to have acquired title by adverse possession under the provisions of Section 47–0603, NDRC 1943, as amended by Chapter 276, SLND 1951, which provides:

"A title to real property, vested in any person or those under whom he claims, who shall have been in the actual open adverse and undisputed possession of the land under such title for a period of ten years and who shall have paid all taxes and assessments legally levied thereon, shall be valid in law. A contract for deed shall constitute color of title within the meaning of this section from and after the execution of such contract."

The summons in this action was issued January 21, 1952. Mountrail County deeded to Fred Grandin in 1945 and he deeded this property to the plaintiff in 1949. The ten year period prescribed by the statute above quoted carries back to 1942, some three years before the county deeded to Fred Grandin. To make ten years of adverse possession would require the tacking together of the possessions of Mountrail County, Fred Grandin, and the plaintiff Caroline Grandin. The appellants argue that this cannot be done for two reasons. First, that neither Mountrail County nor the Grandins ever had adverse possession of this property. And second, that Chapter 276, SLND 1951, which for the first time permitted tacking, is not retroactive and that under the facts in this case tacking of the possessions of the county, Fred Grandin, and the plaintiff is not permissible.

■■ The first question under the issue of adverse possession is whether the county was in the actual open adverse and undisputed possession within the meaning of Chapter 276, SLND 1951. The first requi-

site of a claim to property by adverse possession under this statute is color or claim of title. Obviously it must be a defective title, otherwise there would be no need to rely upon adverse possession. Color of title is sufficient to support possession as being adverse. Power v. Kitching, 10 N.D. 254, 86 N.W. 737, 88 Am.St.Rep. 691. A tax deed issued by the county auditor, although void on its face, is sufficient to confer on the grantee color of title which will support actual adverse possession under the provisions of Section 47–0603, NDRC 1943, as amended. Woolfolk v. Albrecht, 22 N.D. 36, 133 N.W. 310.

The next question is whether Mountrail County was "in the actual open adverse and undisputed possession of the land under such title" within ten years prior to the commencement of this action. Such possession is indispensable to plaintiff's right to claim under the statute.

■ Evidence with respect to possession is very meager. In fact there is nothing to indicate that the county ever took possession of the land or took any steps looking toward possession or in any way indicated that the county claimed possession. At the time the county deeded to Fred Grandin, the land, according to a neighbor, was "just wild prairie." There had been a field that had gone back to grass. There is no testimony to show when the field had been cultivated or for how long a period, its extent or who broke the original sod. The land is mostly hilly. The evidence does not show that it was ever grazed, pastured, or any hay cut from it. It is not fenced. The reasonable rental value is twenty-four dallars per year. The plaintiff has cultivated nine acres since 1948. Her son spent four hours picking rock from this field. This labor was worth two dollars an hour. That is the extent of plaintiff's expenditures for improvements. No attempt to improve the land appears to have been made by the county or Fred Grandin. The land is located about three miles from plaintiff's home. As far as this record shows, Mountrail County took no action with respect to either title or pos-

session of the land, except taking the deed from the county auditor to Mountrail County on May 23, 1938, and recording it on July 23, 1938, until June 28, 1945, when the county auditor issued and mailed to Laurits Mandrup Jensen a notice of his right to redeem within thirty days and caused the tax deed to be issued in favor of Fred Grandin, which was executed and acknowledged on behalf of the county by the chairman of the board of county commissioners and the county auditor. It is clear to us that the county never took actual possession of the land. It never obtained title. The most that can be said for the tax deed in favor of the county is that it was color of title which amounts to nothing unless connected with an adverse possession. 1 Am.Jur., Adverse Possession, § 207.

In D. S. B. Johnston Land Co. v. Mitchell, 29 N.D. 510, 151 N.W. 23, this court held that unimproved and unoccupied land is deemed to be in the possession of the holder of the legal title and not in the holder of title under void judicial proceedings. In Bull v. Beiseker, 16 N.D. 290, 113 N.W. 870, 871, 14 L.R.A.,N.S., 514, paragraph 5 of the syllabus says:

"A mere naked color of title, derived through a void foreclosure, does not draw to it even the constructive possession of the property, and therefore does not operate to vest any estate or interest in the property, and cannot confer any such estate or interest by mere lapse of time."

By analogy we conclude that no claim of possession can be based upon void tax deed proceedings alone. The ten year period prescribed by the statute does not begin to run until set in motion by actual adverse possession. The nature of that possession may vary with the character of the land involved. But in each instance it requires something more than mere constructive possession. See Nash v. Northwest Land Co., 15 N.D. 566, 108 N.W. 792; Mears v. Somers Land Co., 18 N.D. 384, 121 N.W. 916; Enderlin Inv. Co. v. Nordhagen, 18 N.D. 517, 123 N.W. 390; Buttz v. James, 33 N.D. 162, 156 N.W. 547; Page v. Smith, 33 N.D. 369, 157 N.W. 477.

Lasley v. Kniskern, 152 Mich. 244, 115 N.W. 971, 972, involved a claim of title by adverse possession based upon void tax titles. In reversing the trial court the Supreme Court of Michigan said:

"It is not enough that a party sets up a hostile claim, and that that claim is known to the original owner. He who seeks to obtain title by adverse possession must not only have a hostile claim, but he must be able to point to a possession under it which is hostile to the original owner."

In Veitch v. Hard, 200 Ala. 77, 75 So. 405, it was held that the mere recording of a deed to a tract of land is not adverse possession thereof and the mere claim of title not accompanied by actual possession, no matter how long continued, is not sufficient to confer title against the true owner.

In Morris v. St. Louis Nat. Bank, 17 Colo. 231, 29 P. 802, 804, it is said:

"* * * while the statute provides that a tax deed, properly executed and recorded, prima facie conveys the title, it nowhere provides that such deed shall give the purchaser possession of the property conveyed. It certainly does not give him an actual, adverse possession, such as would compel the original owner to resort to an action in the nature of ejectment to recover possession of the premises. On the contrary, the original owner being in possession by virtue of a perfect legal title, such possession is to be deemed sufficient for purposes of remedy, and to continue until interrupted by an actual entry and adverse possession taken by another."

Morton v. Van Orsdol, 203 Okl. 394, 222 P.2d 520, 523, is very much in point. The action was one to quiet title. The plaintiff had acquired a county commissioner's deed following a resale of the lands to the county for delinquent taxes,

which is exactly the situation of the plaintiff in this case. In that case defendant was the owner of the legal title except for a county treasurer's deed, known as a resale deed, to the county and the county commissioner's deed to the plaintiff. The plaintiff had obtained his deed from the county thirteen years before the action was commenced. An Oklahoma residuary statute of limitations required that an action for the recovery of real property "not hereinbefore provided for" should be brought within fifteen years. The county treasurer's deed to the county had been issued more than fifteen years prior to the commencement of the action. In order to succeed in establishing the fifteen years of adverse possession the plaintiff had to go back to the county treasurer's deed under which the county claimed title. The deed which the county had obtained, though regular on its face, was void. The court said:

"Herein the plaintiff made no claim of having taken possession of the property until receipt of commissioner's deed, or 13 years before the commencement of this action, but suggests that he was a successor to the county in claim of title under the resale deed issued 3 years before commissioner's deed, and that presumption exists that the county officials took possession of the land under the resale deed.

"But the resale deed was void and no presumption follows that the county took possession of the defendant's property under such void instrument. The following rule as stated in 2 C.J. 53, is here applicable: 'The constructive possession of land is always in the holder of the best title, unless he has renounced it, and this constructive possession can never be ousted by anything less than an actual possession maintained for the necessary period.' See also, 2 C.J.S., Adverse Possession, § 19.

"In plaintiff's occupancy of the land for 13 years he acquired no title by prescription and the statutes supra do not apply in bar of defendant's proceeding against the void conveyance under which the plaintiff claims title."

Although Mountrail County had color of title to the land in question, it never took actual possession thereof. Without actual possession there could be no adverse possession by the county to add to that of the Grandins to make up the statutory ten year period. We need not consider the question of tacking or whether possession by a county under a tax title may ever be adverse to the original owner who has the right of repurchase.

In reply to defendants' counterclaim the plaintiff pleads laches and asserts that even though it be held that the plaintiff has not acquired title by adverse possession, nevertheless the failure of the defendant Jensen to assert his legal title against the color of title which was conveyed to Fred Grandin and the possession of plaintiff and her husband constitutes laches and equitable estoppel on the part of Jensen which bars him from successfully asserting his counterclaim. A similar assertion was made in Morton v. Van Orsdol, supra. In rejecting the contention the court said:

"The plaintiff erected a connecting fence on his commencement of pasturage of the land, and paid the taxes on the land during his use of the land, and the land has increased in value, but through no effort of the plaintiff. These facts do not reflect a detriment to plaintiff growing out of defendant's delay in attacking plaintiff's claim of title as sufficient to justify application of the doctrine of laches."

In arriving at this conclusion the court also quoted the following passage from Jones v. McNabb, 184 Okl. 9, 84 P.2d 429:

"The question of whether a claim is barred by laches must be determined by the facts and circumstances in each case and according to right and justice. Laches, in legal significance, is delay that works a disadvantage to another and causes change of condition or relation during the period of delay.

"The failure of the owner of real estate to pay taxes thereon from 1911 to 1936, and the payment of such taxes by the purchaser at a tax sale, and the increase in value of the property by the discovery of oil nearby, held not sufficient to sustain a defense of laches in favor of the holder of a void tax deed."

■ In Larson v. Quanrud, Brink & Reibold, 78 N.D. 70, 47 N.W.2d 743, 745, 29 A.L.R.2d 230, syllabus 9, we said:

"Laches does not arise from mere delay or lapse of time. The party against whom laches is sought to be invoked must be actually or presumptively aware of his rights and fail to assert them against a party who has in good faith permitted his position to become so changed that he cannot be restored to his former state."

We have applied this principle in tax title cases—Werner v. Werner, 74 N.D. 565, 23 N.W.2d 757; Sailer v. Mercer County, 75 N.D. 123, 26 N.W.2d 137; Morehouse, for Use and Benefit of Sailer v. Paulson, 75 N.D. 525, 28 N.W.2d 608; Star v. Norsteby, 75 N.D. 563, 30 N.W.2d 718; Loy for Use and Benefit of Union Securities Co. v. Kessler, 76 N.D. 738, 39 N.W.2d 260—and other cases—Gronna v. Goldammer, 26 N.D. 122, 143 N.W. 394, Ann.Cas. 1916A, 165; Dakota Trust Co. v. Headland, 57 N.D. 810, 224 N.W. 220; Commercial Credit Corp. v. Dassenko, 77 N.D. 412, 43 N.W.2d 299. See also 19 Am.Jur., Equity, § 501; 30 C.J.S., Equity, § 116.

The Supreme Court of South Dakota has said:

"Laches is not, like limitation, a mere matter of time, but principally a question of the inequity in permitting the claim to be enforced, an inequity founded upon some change in the conditions, or the relations of the property or the parties." Shearer v. Hutterische Bruder Gemeinde, 28 S.D. 509, 134 N. W. 63, 65. See also Schwartzle v. Dale, S.D., 54 N.W.2d 361.

It is suggested that the case of Raasch v. Goulet, 57 N.D. 674, 223 N.W. 808, while not directly in point, presents analogous reasoning that supports plaintiff's contention. The vendee in a land contract sought to enforce specific performance of a contract made more than ten years previous to the bringing of the action. The vendee had been ousted. The court held that because the plaintiff Raasch had remained completely silent for a period of ten years and acquiesced in the ouster he had in fact and in law abandoned the land and the contract and denied him the relief of specific performance. The analogy between that case and the one at bar is indeed remote. The only evidence to which the plaintiff points as indicating abandonment is the failure of Jensen to pay taxes. On the other hand, Jensen executed an easement to Montana-Dakota Power Company in October 1931 and gave a mineral deed to John W. Smith in February 1937. Thus it is indicated that he had not abandoned the land up to that time. If the tax deed proceedings by the county had been valid, Jensen would have had the right to repurchase his land as long as the tax title remained in the county. Section 57-2819, NDRC 1943. There is no proof that he ever received the notice purporting to terminate his right of repurchase. This record does not show an abandonment.

The first actual possession adverse to Jensen appears when the plaintiff's son broke up nine acres of sod and spent four hours picking rock in 1948. There is no evidence to indicate that Jensen knew that the tax title of the county was defective. If he is charged with notice of the law in that respect, then so was the purchaser from the county and the plaintiff. The situation in this respect is similar to the one presented in Morehouse, for Use and Benefit of Sailer v. Paulson, 75 N.D. 525, 28 N.W.2d 608, 616, where, in considering the question of laches, we said:

"Respondent Paulson alleges loss occurring to him because of rise in price of land, some improvements made—all in belief in the validity of the tax proceedings. ' "Their mutual ignorance

of the invalidity of the tax sale no more affected the conscience of one than the other; and it may be more unconscionable to enforce the invalid tax sale against one party than it would be against the other to set it aside, and leave the parties to their rights as they would then exist." Werner v. Werner, 74 N.D. 565, 572, 23 N.W.2d 757, 759.

"Respondent Paulson alleges laches. There is no merit in this. Any delay in bringing action on the part of the plaintiff did not in any way alter the status of the defendant Paulson. In this respect it may not be out of place to mention that if one attempting to avoid tax deeds is presumed to know the law, and the effects thereof, the purchaser from the county would also be required to know that this notice of expiration of period of redemption is invalid because it required as terms of redemption the payment of taxes which could not be included, and the payment of the hail taxes."

As bearing upon the equities of the case, we point out that Section 57-4510, NDRC 1953 Supp. provides where an action is brought to test the validity of a deed issued by the county to a purchaser of lands acquired through tax deed proceedings, the action may not proceed until the party assailing the deed, within the time ordered by the court, shall deposit with the clerk of court for the benefit of the county should the deed be held invalid the amount of all delinquent and unpaid taxes on the property, including penalty, interest, and taxes paid by the purchaser. It is further provided that should the action be determined adversely to the purchaser, the county shall repay to him all money which it received on the purchase. In compliance with this statute, the appellants deposited with the clerk of the District Court of Mountrail County $1220.97. Under the terms of this statute, the plaintiff will be paid all that was paid to the county and the county, which received only $120 on its sale to Fred Grandin, will receive all unpaid taxes, which include the lump sum of the taxes amounting to $414.96 for which the property was originally sold to the county in the void tax deed proceedings. Thus the plaintiff will be reimbursed and the county will realize a considerable profit out of the deposit.

We reach the conclusion that the appellants, Jensen and Smith, are not barred by laches from maintaining their counterclaim.

In further reply to defendants' counterclaim, the plaintiff sets up as a defense thereto our residuary statute of limitations, being Section 28-0122, NDRC 1943, which provides:

"An action for relief not otherwise provided for must be commenced within ten years after the cause of action shall have accrued."

Plaintiff cites two cases involving void mortgage foreclosures where it is held that the adverse possession of a mortgagee in possession for ten years could be asserted under the residuary statute as a defense in an action to quiet title. They are Nash v. Northwest Land Co., 15 N.D. 566, 108 N.W. 792; Steinwand v. Brown, 38 N.D. 602, 166 N.W. 129. In Mears v. Somers Land Co., 18 N.D. 384, 121 N.W. 916, and Jungkunz v. Comonow, 43 N.D. 212, 174 N.W. 68, this court recognized the application of the ten year residuary statute. But in those cases, also, adverse possession had existed for ten years. In the latter case the court held that the cause of action to redeem from a void foreclosure was barred by both the statute of limitations and laches, more than ten years having elapsed since the cause of action arose.

"The presumption of the law is against, and not in favor of, an adverse possession." Blessett v. Turcotte, 23 N.D. 417, 136 N.W. 945, 948.

In the case at bar adverse possession has not continued for a period of ten years prior to the bringing of the counterclaim. This distinction is important. All that Mountrail County ever had was bare color

of title, which was a mere cloud upon the title of the record owner Jensen. His presumptive possession was never divested by the county and as far as this record shows was not divested until 1948. If the county's void tax deed had in fact been valid, Jensen would have had the right to repurchase the land as long as the tax title remained in the county. Section 57–2819, NDRC 1943. Did the ten year statute under consideration run against Jensen's right of action to quiet title during the period in which the county held mere color of title under a void tax deed and during which Jensen would have had the right to repurchase if the county's title had been valid? Certainly one who has valid title and possession of land need not be ever watchful lest someone place a void deed of record which after a period of ten years the owner would be powerless to have removed as a cloud upon his title because of our statute of limitations.

In Bailey v. Hopkins, 152 N.C. 748, 67 S.E. 569, 570, it is said:

"A landowner cannot be expected to bring action against every man who, while not in possession, shall declare he claims an interest in the property, under penalty to the owner after the lapse of 10 years of being barred of action for a later assertion of title."

In Secret Valley Land Co. v. Perry, 187 Cal. 420, 202 P. 449, 451, the Supreme Court of California in considering both laches and the statute of limitations expressed itself pertinently as follows:

"A defendant holding the legal title, or a paramount claim to the legal title, is not called upon to take action against a hostile claim which is not of a nature to ripen into a valid adverse title. Farmers' Loan & Trust Co. v. Denver, L. & G. R. Co., 126 F. 46, 60 C.C.A. 588; Hays v. Marsh, 123 Iowa 81, 98 N.W. 604.

"It would be strange application of the doctrine of laches to hold in this instance that the plaintiff could maintain its attack upon the validity of defendants' claim of title, but that the

defendants might not defend by showing the invalidity of plaintiff's claim. Defendants' right of action is no more stale than that of plaintiff. Both arose at the same time. When plaintiff redeemed from the tax sale and obtained a certificate of purchase from the state, a right of action arose in favor of each claimant against the other, where neither had a right of action before.

"The same argument applies to the plea of the statute of limitations. Plaintiff commences this action 9 years after its right of action accrued, and interposes the plea of the statute of limitations against an affirmative defense which arose at the same time.

"In any event, this is not a case where the statute of limitations has run against either of the parties. An outstanding adverse claim, which amounts only to a cloud upon the title, is a continuing cause of action, and is not barred by lapse of time, until the hostile claim is asserted in some manner to jeopardize the superior title. So long as the adverse claim lies dormant and inactive the owner of the superior title may not be incommoded by it, and has the privilege of allowing it to stand indefinitely. Each day's assertion of such adverse claim gives a renewed cause of action to quiet title until such action is brought. People v. Center, 66 Cal. 551, 565, 5 P. 263, 6 P. 481; Hyde v. Redding, 74 Cal. 493, 16 P. 380; Kypadel Coal & Lumber Co. v. Millard, supra. (165 Ky. 432, 177 S.W. 270.)" See also Page v. Smith, 33 N.D. 369, 157 N.W. 477; Newport v. Hatton, 195 Cal. 132, 231 P. 987; Cooper v. Rhea, 82 Kan. 109, 107 P. 799, 29 L.R.A.,N.S., 930, 136 Am.St.Rep. 100, 20 Ann.Cas. 42, and note.

■ Assuming that the ten year residuary statute of limitations is otherwise applicable under the facts in this case, it is clear to all of us that the mere color of title of Mountrail County as evidenced by its void tax deed did not start the period of the statute to run and that ten years did

**138**

not elapse between the time the appellant Jensen's cause of action accrued and his assertion thereof in his counterclaim. The same reasoning applies to the rights of the appellant Smith, with the same result. .

The judgment appealed from is reversed and the case is remanded for entry of judgment in conformity herewith.

BURKE, SATHRE and GRIMSON, JJ., concur.