[Bass v. Jackson Lumber Company.]

# Bass *v.* Jackson Lumber Company.

*Forcible Entry and Detainer.*

(Decided Nov. 24, 1910.   53 South. 800.)

1. *Adverse Possession; Evidence.*—The evidence stated and held insufficient to show that the persons through whom plaintiff claimed or the plaintiff had adverse possession to the land.

2. *Same; Payment of Taxes.*—To show the bona fides of the claim of adverse possession and to illustrate the meaning of his acts, one may show payment of taxes, along with evidence of adverse pos- session although such payment is not an act of adverse possession.

3. *Same; Acts of Possession; What Constitutes.*—Such actual pos- session as to give title by adverse possession is not shown by an occasional riding along the road over the land to warn off tres- passers if any should be found.

APPEAL from Covington Circuit Court.

Heard before Hon. H. A. PEARCE.

Forcible entry and unlawful detainer by the Jack- son Lumber Company against W. H. Bass. Removed by petition and affidavit to the circuit court under the statute by the defendant before trial in the justice court. Judgment for plaintiff and defendant appeals. Revers- ed and remanded.

FOSTER, SAMFORD & CARROLL, and J. M. PRESTWOOD, for appellant.   The defendant in this case traces his· title clearly and completely back to the government, and unless the plaintiff has shown adverse possession for a sufficient length of time, the defendant was entitled to the affirmative charge.   As to what will constitute ad- verse possession of wild land, and adverse possession generally, see the following cases: *O'Donahue v. Holmes,* 107 Ala. 498; *So. Ry. v. Hall,* 145 Ala. 225; *Reddick v. Long,* 124 Ala. 260; *McDaniel v. Sloss,* 44 So. 705; *Jack- son L. Co. v. McCrary,* 137 Ala. 278.   Payment of taxes

is admissible in connection with evidence of actual possession to show the extent of such possession although not in itself an act of possession.—*Chastang v. Chastang,* 141 Ala. 451; *So. R. R. Co. v. Hall, supra.* Jordan acquired no title or color of title under the facts stated. *Howell v. Henry,* 47 So. 132; *T. C. I. & R. R. Co. v. Linn,* 123 Ala. 112. Merely riding through land along a road is not sufficient to show actual possession to set the statute to running.—*McCrary v. Jackson L. Co.,* 148 Ala. 251; *Dodge v. Irvington,* 48 So. 383.

W. O. MULKEY, for appellee. Counsel insists that the appellee exercised such acts of ownership and possession as the land was capable of in its then condition, and that the court properly submitted all the questions to the jury.—*Norment v. Eureka Co.,* 98 Ala. 181; *King v. Driver,* 145 Ala. 561; 1 Cyc. 983; *Farley v. Smith,* 39 Ala. 38; *Jackson L. Co. v. McCrary,* 148 Ala. 247. The defendant was certainly not entitled to the affirmative charge.—2 Mayf. Dig. 562, Sec. 18, and cases there cited.

EVANS, J.—The Jackson Lumber Company, the appellee, on the 10th day of June, 1907, filed its suit, in forcible entry and unlawful detainer, in the city court of Andalusia. On the 25th of June, 1907, the appellant (defendant in the court below), by petition, as provided by the statute, had the cause removed into the circuit court of Covington county, Ala., for the purpose of contesting with plaintiff the title to said land.

There is practically no dispute about the facts in the case. One John D. McRae entered the land and patent was issued to him, by the United States, about the year 1853. He had a cabin and a small clearing upon the land, where he lived with his wife, Mary A. McRae, un-

til he left home to go to the War between the States. The said John D. McRae died in October, 1865, never returning home. He left surviving him a widow, the said Mary A. McRae, and one child. A short while after the death of the father the child died. This, under the provisions of the Code of 1852 (subdivision 3 of section 1572), placed the entire title to the land in the said Mary A. McRae. After the death of the child, the said Mary A. McRae married one W. R. Parker. In August, 1868, a deed was written out and signed by her, but not by her husband, purporting to convey the land sued for to one Josiah Hart. This deed was never delivered to the said Hart, nor did Hart ever take possession of or claim the land. The deed was regular in form to convey the title.

Some time after this deed was written, purporting to convey the said lands to Hart, the said Mary A. Parker swapped the land to one Jordan for some hogs, and delivered to him "three little pieces of paper; looked like a sheet of small blank book paper." This was three or four years right after the war. She did not make him a deed, but one of the pieces of paper delivered to him was the paper writing heretofore mentioned, purporting to convey the lands to said Hart. It is not shown what the other two pieces of paper were. Neither she nor the said Jordan could, at that time, read or write. Jordan did not go into possession of the land. She was living in the house with Jordan at the time.

Some time after the last above mentioned transaction (the evidence does not disclose when) the said Jordan, claiming to own the lands, swapped said lands to one W. F. Martin for a watch, and delivered to him the same papers that he (the said Jordan) had received from Mary A. Parker, but executed no deed, and the said Martin did not go into possession of the land.

On the 12th of July, 1875, the said Martin sold the land to one James H. Cravey for the sum of $40, and executed and delivered to the said Cravey a warranty deed purporting to convey the said lands from the said Martin to the said Cravey. The said Cravey did not take possession of the lands. The lands were wild lands, except for the cabin and the cleared patch. As a witness for plaintiff the said Cravey testified: "I bought that land from W. F. Martin. I went into possession of it. I did not move on it, nor take actual possession; but I bought the land, and there was not anybody on it, and afterwards claimed the land as my own."

On the 2d day of August, 1892, the said Cravey sold the lands to one P. D. Bulger for the consideration of $35, and executed and delivered to him a warranty deed, purporting to convey the land to him. The only evidence that Bulger was ever in possession of the land was that in the testimony of J. T. Manning, who, as agent for the plaintiff, bought the lands from said Bulger on the 6th day of August, 1892. The testimony is as follows: "I bought the lands from P. D. Bulger. Yes, sir; he was in possession of it; that is, he went over there and looked at it at the time. He claimed to own it. I procured this deed from Bulger to the Jackson Lumber Company in 1892." The said paper, purporting to be a deed, was regular in form. All the deeds mentioned were regularly introduced in evidence, against the objection and exception of defendant.

The only acts of possession, or tending to show possession, of which evidence was offered, to show the possession of plaintiff, the Jackson Lumber Company, after its purchase, were the payment of taxes on the land since said purchase, the sale of a right of way to the Louisville & Nashville Railroad Company, in 1902, across said lands, and the cutting of the trees off of said right of

way after such sale, and the riding along a road through said lands some 25 times for the purpose of warning off trespassers, if any should be found. No trespassers were ever found, unless the defendant was one, and he had been residing on the land about two or three months when he was found.

The defendant in the court below, appellant here, derives his title, if he has any, from the said Mary A. Parker, now Mary A. Gadson, and her husband, A. Gadson. He introduced a deed regular in every respect in form to convey the titles of said lands from the said Mary A. Gadson and A. Gadson to the defendant, W. H. Bass. The evidence makes out a clear title in the defendant, Bass, unless the plaintiff, together with those under whom he holds or claims, have acquired title by adverse possession.

It seems clear that none of the parties under whom plaintiff claims ever had either title or adverse possession of the lands. While some of them testify that they took possession, or went into possession, still, when they state the facts of which that act was supposed to have been composed, those facts show no adverse possession at all. The plaintiff does not show any act of adverse possession, except the sale of the right of way to the Louisville & Nashville Railroad Company in 1902, and cutting the trees therefrom. The payment of taxes is not an act of adverse possession, but is competent, along with evidence of adverse possession, to show bona fides of the claim, and to illustrate the meaning of such acts. It is true the plaintiff's agent rode several times along a road that runs through the land; but this would not be calculated to put the true owner on notice that plaintiff claimed the land. If there was a road there, it is probable that many other peole at times rode or walked along said road. Besides, it is not shown when this

riding was done, and the burden was upon the plaintiff to make out his case. It may have been done, for aught that appears in the evidence, after the sale of the right of way above mentioned. It is therefore clear that the first act of adverse possession shown to have taken place was in 1902, and, the suit having been brought in 1907, the plaintiff has failed to make out a title to said lands by adverse possession.

The affirmative charge should have been given, as requested by defendant. For the error pointed out, the judgment of the lower court is reversed, and the cause remanded.

DOWDELL, C. J., and ANDERSON and SAYRE, JJ., concur.