200 So. 736

## BRADLEY et al. v. GORDON.

### 6 Div. 763.

Supreme Court of Alabama.
Feb. 20, 1941.

557

J. T. Johnson, of Oneonta, for appellants.

P. A. Nash, of Oneonta, for appellee.

558

FOSTER, Justice.

This is an action of ejectment at the suit of appellee for the recovery of lot No. 3, Block 12 of Pinehurst Addition to Oneonta.

Plaintiff's claim of title is—deed dated November 27, 1936, to her from Tidwell, recorded November 28, 1936; deed to Tidwell dated September 19, 1936, from Daniel, recorded February 27, 1937; deed to Daniel dated November 22, 1915, from Whited, recorded November 23, 1915.

Prior to August 7, 1913, the tract of which this is a part was owned and possessed by Roberts and Layman, and on that day they sold it to Diamond Realty Company, a corporation, who subdivided and platted it, and conducted an auction sale. Plaintiff was permitted to prove that at this auction sale the lots were numbered wrong as to Block 12, in inverse order throughout the block, so that lot No. 3 was numbered 5, and lot No. 5 was numbered 3, along with the erroneous system.

Defendant Bradley claims under a chain of title from Diamond Realty Company conveying a lot described as No. 3 in Block 12, beginning with one dated December 30, 1913, to Lena Marlow (later Lena Moore), who deeded it to Bradley March 1, 1937 by that description. Plaintiff claimed that Whited acquired this lot by deed from one Lacy July 15, 1915, but the deed conveys lot No. 5, Block 12. On November 21, 1914, Diamond Realty Company deeded to Lacy lot No. 5, Block 12.

On October 30, 1915, two deeds were executed, one by Roberts, who was one of the original owners, to Lacy; and one by Lacy and Whited to Roberts, recorded in November 1915. They recite that Diamond Realty Company had sold to Lacy lot No. 3, Block 12, and by mistake the deed to him described it as lot No. 5, Block 12; that the Diamond Realty Company is no longer in business. The two deeds corrected this alleged mistake so as to convey to Lacy lot No. 3, and to convey to Roberts lot No. 5, which had been included in the deed to Lacy by Diamond Realty Company, and in the deed from Lacy to Whited.

Objection was made to all evidence of such mistake, and to the recitals of it in the deeds mentioned above.

It appears from this status that the deed of October 30, 1915, to Whited, called the deed of correction, in which the alleged proper description was included, preceded that from Whited to Daniel on November 22, 1915. Those correction deeds serve only to show color of title in Whited from October 30, 1915, and their recitals of the error in description and other evidence of that error serve only to show good faith on the part of Whited and his successors in interest in their claim of possession under color of title.

All that evidence was legal and relevant in connection with evidence of possession, although it is not sufficient of itself to support a claim of title, since the legal title had passed and was held by those in defendant's chain. "Color of title is a writing which in appearance purports to transmit title, or the right of possession, but which in reality does not." Bowles v. Lowery, 181 Ala. 603, 62 So. 107, 109; Crowder v. Doe ex dem. T. C., I. & R. R. Co., 162 Ala. 151, 50 So. 230, 136 Am.St. Rep. 17.

The tax assessment books are incomplete, but they show that for the year 1917 lot 3, Block 12, was assessed to Daniel. There is no assessment shown there until 1924. For 1924, 1925, 1926, 1927, it was assessed to Daniel. There is no further record of an assessment of this lot until 1937 to Tidwell, who made an escape assessment for 1932 to 1936. It is here noted that the deed to Tidwell from Daniel was dated September 19, 1936. It was also assessed for the years 1932 to 1936 to Mrs. Brice, one of the defendants. This assessment was made evidently as an escape and it was dated March 1937. Mrs. Brice was the mother of Lena Marlow (Moore). Mrs. Moore lived in a distant state, and Mrs. Brice

looked after her interests, and was sued along with Bradley. This suit was begun March 3, 1937.

█ It thus appears that plaintiff had a recorded color of title, including that of those through whom she claims, extending to November 1915, more than ten years prior to the commencement of this action. This satisfies section 6069, Code, without the annual assessment of it for ten years. We need not inquire if the statute in that respect was complied with. Those are alternative, not cumulative requirements.

█ Plaintiff's right to recover depends upon title acquired by adverse possession. There is no dispute as to its original source. In fact both claim under that source. But in this, a court of law, there can be no reformation of the instruments. The attempt to correct the alleged errors was made at a time and under circumstances which did not affect the legal title held by defendants' predecessor. It was a vacant lot, except as we will later describe. For the present we will emphasize the principles applicable to the acquisition of the title to a vacant lot by adverse possession.

█ The payment of taxes on property and an occasional trip over the land looking after it do not alone constitute adverse possession. Reddick v. Long, 124 Ala. 260, 27 So. 402; Bass v. Jackson Lumber Co., 169 Ala. 455, 53 So. 800; Jackson Lumber Co. v. McCreary, 137 Ala. 278, 34 So. 850; Williams v. Lyon, 181 Ala. 531, 61 So. 299.

█ That one requested another to look after it for him and keep intruders off, which he did by going on the land occasionally, does not show adverse possession. Reddick v. Long, supra; Jackson Lumber Co. v. McCreary, supra; Wiggins v. Kirby, 106 Ala. 262, 17 So. 354. An occasional entry on land alone will never ripen into adverse possession against the true owner. Green v. Marlin, 219 Ala. 27, 121 So. 19.

█ But payment of taxes along with evidence of possession is admissible to show bona fides of a claim and to illustrate the meaning of acts of possession. Bass v. Jackson Lumber Co., supra; Big Sandy I. & S. Co. v. Williams, 184 Ala. 184, 63 So. 1011.

█ The legal title draws to itself the constructive possession of unenclosed, unimproved and unoccupied lots. 16 Ala.Dig., Property, page 441, ☞7; Id., page 444, ☞10.

On behalf of plaintiff there was no evidence that Lacy or Whited did any act of possession in respect to this lot. When Mrs. Daniel acquired a deed in 1915, she (living in Birmingham) requested her brother, Tidwell, to look after it for her. She did nothing else about it, but to assess and pay the taxes. Tidwell testified that for her "I just passed around, looking at it and kind of kept my eye on it. * * * Just looked at it in passing by, seeing that nothing bothered it. * * * I put the water on it, and helped clean off a little bit of it. * * * I helped clean off the front part of the lot. And put water on it in 1917. Put a pipe line in and ran city water to it. This was done for Mrs. Minnie Daniel, my sister. I couldn't say how long this water pipe stayed there but for several years, six or eight and the water we used came from it. The plaintiff then asked the witness * * * 'Who used it?' A. 'Mr. Adrian Fendley.' 'I'll ask you to state whether or not he said anything about getting your permission to use the water there off of this lot. * * *' A. 'He did.' This lot is a vacant lot. Mrs. Daniel did nothing toward building a house on it. Mr. Daniel, her husband, had it cleaned off in the front. I paid the taxes and assessed it part of the time for Mrs. Daniel. The plaintiff then asked witness, 'Now, I'll ask you to state when you began to look after that for your sister?' * * * 'Sometime after 1916.' Q. 'How long did you look after that for her?' * * * A. 'Well, on up until two or three years ago. That was until I purchased the lots.' * * * There was never any building on this lot; it was never cultivated. And I passed along the lot on the street and may be went through the lot but I couldn't say. I just walked in it and around it; there was a fence around it for the last few years; there was no fence around it in 1926; I was up there that year but couldn't say what time of the year and couldn't say how many times that year; I wouldn't say positively that I was on that lot that year; wouldn't testify that I was there in 1916 or 1918; I was working down in town at that time; I have nothing to refresh my recollection about going up there in 1918 and wouldn't tell the jury that I did; I couldn't say that I was there in 1924; I didn't plow a furrow in this lot because we didn't want to cut the trees or cultivate it. They were pretty shade; we didn't trim the trees in 1924 and never did do anything to the trees. * * * Those shade trees were

560

not very large, just nice little shade trees, eight or ten feet high and about eight or ten inches in diameter; about twelve or fifteen of them and these are the shade trees that I spoke about at the time the water was put there. The hydrant was kept open on this property. about a year and I don't know just when the water was cut off."

Mr. Bradley testified that he bought the adjoining lot No. 2, and built on it in 1926, and has lived there since then. A Mr. Daughdrill had claimed lot No. 3, and had a barn built on the back end of it. He had received a deed to this lot in 1917 from Roberts, and after the date of the deed by Diamond Realty Company to Marlow, and later in 1918 he deeded it to Marlow, under whom Bradley claims. Bradley bought lot No. 3 from Marlow (Moore) in March 1937. Before doing so he had some negotiation with Tidwell and Mrs. Daniel about buying from them.

The lot was never cultivated, and was of little value. A short time before suit was brought plaintiff's husband hired a man to move some rocks off of it, and was forbidden by Mrs. Brice, one of the defendants. Defendant Bradley testified that no one has been on that lot to use it except him since he started to build in 1926.

This evidence is not sufficient to justify a verdict for plaintiff on the basis of title acquired by adverse possession, nor to submit the question to a jury. Defendants were due the affirmative charge as requested. On this state of the evidence, if plaintiff has any claim it is in equity. See Walling v. Moss, ante, p. 87, 197 So. 30; Jones v. McNealey, 139 Ala. 378, 379(4), 35 So. 1022, 101 Am.St.Rep. 38.

Reversed and remanded.

GARDNER, C. J., and THOMAS and BROWN, JJ., concur.