(75 South. 405)

VEITCH v. HARD et al.    (6 Div. 205.)

(Supreme Court of Alabama.    April 5, 1917.
On Rehearing, May 17, 1917.)

1. ADVERSE POSSESSION ⬌85(2)—EVIDENCE
—COLOR OF TITLE.

A document offered as color of title is relevant and admissible in evidence for that purpose only in connection with evidence of actual possession and claim thereunder by the grantee therein, and deeds to others than the actual adverse possessor are inadmissible to show color of title in him.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 501–503.]

2. TRIAL ⬌253(8)—INSTRUCTIONS—IGNORING
ISSUES.

In statutory ejectment where defendant relied on adverse possession, the court properly refused to give for plaintiff an instruction ignoring the fact that defendant was claiming, not only under two separate deeds of two 40's, but also under a quitclaim to both 40's from another person.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 620.]

3. ADVERSE POSSESSION ⬌16(1) — MERE RECORDING OF DEED.

The mere recording of a deed to a tract of land is not adverse possession thereof, and the true owner is not required to take notice of any deed purporting to convey his title which another may have recorded.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 82, 83, 87–89.]

4. ADVERSE POSSESSION ⬌14—CLAIM OF TITLE—NECESSITY OF POSSESSION.

The mere claim of a right or title to land not accompanied by actual possession, no matter how long continued such claim may be, and no matter how publicly the claim is made, is not sufficient to confer title as against the true owner.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. §§ 77–81.]

5. APPEAL AND ERROR ⬌1067—PREJUDICIAL
ERROR—REFUSAL OF INSTRUCTIONS.

In statutory ejectment the refusal of correct and applicable instructions as to defendant's adverse possession, not substantially covered by any other charge, was prejudicial.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4229.]

6. ADVERSE POSSESSION ⬌79(4)—VOID TAX
DEED—THREE YEAR LIMITATION — POSSESSION.

To acquire title by adverse possession under a void tax deed the statute of limitations does not begin to run until actual possession is taken thereunder, and, to be adverse, the party setting up such adverse possession, and those through whom he or she claims, must have been in actual possession uninterruptedly during a period of 3 consecutive years thereafter.

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 462.]

7. TRIAL ⬌260(5)—REFUSAL OF INSTRUCTIONS — SUFFICIENCY OF INSTRUCTIONS
GIVEN.

In statutory ejectment, a requested charge on adverse possession under tax deeds for 3 years was properly refused plaintiff, where defendant was not invoking such limitation and the jury had been charged that defendant could defeat plaintiff's title only by an adverse possession under any of her deeds for 10 years,

an instruction more advantageous to plaintiff than the requested special charge.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 655.]

8. ADVERSE POSSESSION ⬌116(4)—INSTRUCTIONS.

Where an instruction requires that adverse possession must be "continuous" for 10 years, it is not necessary also to say that the 10 years must be "consecutive."

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 66.]

9. ADVERSE POSSESSION ⬌116(5)—INSTRUCTIONS.

Where in instructions defining adverse possession by a statement of its various elements the term "hostile" is omitted, but the possession itself is required to be "adverse," the omission is not per se erroneous, but should be corrected by an explanatory charge, further explaining the meaning of the term "adverse."

[Ed. Note.—For other cases, see Adverse Possession, Cent. Dig. § 66.]

On Rehearing.

10. PUBLIC LANDS ⬌135(1)—DEED BY ENTRYMAN.

An entryman's warranty deed, made in 1838, carried to his grantee the legal title acquired by him by patent in 1839, irrespective of whether at the time of the deed he had made final payment.

[Ed. Note.—For other cases, see Public Lands, Cent. Dig. §§ 351, 352, 358, 361, 362.]

11. DEEDS ⬌83—PROOF OF OFFICIAL AUTHORITY OF CERTIFYING OFFICER.

A deed signed by mark, acknowledged before a Mississippi justice of the peace, without formal attestation, was not entitled to registration without proof of the official authority of the certifying officer.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 218–221.]

12. DEEDS ⬌47—SIGNATURE BY MARK.

A deed signed by mark, acknowledged before a justice of the peace without formal attestation was prima facie validly executed prior to the Code 1852, § 1266, which required the attestation by two witnesses of a deed signed by a mark.

[Ed. Note.—For other cases, see Deeds, Cent. Dig. §§ 104–110.]

13. EVIDENCE ⬌370(10)—CERTIFIED TRANSCRIPT OF RECORD—DEED—PROOF OF EXECUTION.

Under Code 1907, § 3382, providing that when a validly executed instrument, not properly acknowledged and recorded, has for 20 years been of record, etc., a duly certified transcript thereof shall have the same force and effect as if it had been duly acknowledged and recorded, and section 3374, as to transcripts of duly recorded conveyances, a certified transcript of the record of a deed which was prima facie validly executed and which had been recorded for over 20 years, dispensed with proof of its execution.

[Ed. Note.—For other cases, see Evidence, Cent. Dig. §§ 1575, 1576.]

14. EJECTMENT ⬌95(1) — POSSESSION BY
PLAINTIFF.

The rule that prior constructive possession authorizes recovery in statutory ejectment when supported by the paramount legal title was not changed by the broadening of the form of the complaint effected by Code 1896, § 1530, to permit an allegation either of prior possession or of legal title.

[Ed. Note.—For other cases, see Ejectment, Cent. Dig. §§ 280, 282, 283, 285–294.]

⬌For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

Appeal from City Court of Bessemer; J. C. B. Gwin, Judge.

Statutory ejectment by Georgia A. Veitch against James H. Hard and others. Judgment for defendants, and plaintiff appeals. Reversed and remanded.

Plaintiff showed a paper title from the government into her deceased ancestor, and her succession thereto, but without any actual possession by either. Defendant claimed by adverse possession under color of title for 10 years. Defendant introduced in evidence her color of title only a chain of six deeds from George Smith (in 1885) down to Charles F. Hard, her immediate grandchild (in 1891), also of color of title only two separate deeds from Charles F. Hard to herself in 1902, and a tax deed from John McQueen, and a quitclaim from McQueen to herself in 1901–02, respectively. Apart from plaintiff's acts of ownership after 1902, none of the grantees under these several deeds ever held any actual possession of the land, either by occupation or by acts of dominion. At the close of the evidence plaintiff moved the court to exclude each of these deeds separately and severally because no acts of possession had been shown thereunder, which motions were overruled with exceptions. Defendant and her grantor Charles F. Hard have assessed and paid taxes on these lands regularly since 1891, except for the year 1900. Defendant testified that since buying the land she had built a house, which was afterwards destroyed by fire, visited it frequently, picnicked on the land, hauled wood from it, and such acts of possession have been continuous from year to year since they bought it. She stated that her husband had looked after the property for her. The particular acts of ownership shown by her, and her husband's testimony are: In 1902, a small log house was built on the southern 40 of the 80, and some timber was then cut, the house having been burned in a year or two; in 1903 a few sawlogs were cut, and about the same time a small shed house on the northern 40, which was never used except for occasional shelter, and remained only a short while; at intervals after 1902, particularly in 1903, 1904, and 1905, the land was posted in places; the land was visited by them occasionally; wood was removed at intervals; their cow and a flock of goats grazed on the land; they spent one night there, but slept on the ground; in 1912 posts were placed on the west line of the southern 40; in 1914 a new house was built on each 40 with a fence around each house. George Smith lived on one 40 in 1886, claiming both 40's, and had several acres under fence. His house was destroyed in a year or so, and he moved away and did not return. Except as stated, the land is in the woods, wild and uncultivated. It has always been unfenced, and was used by the public generally as a common pasture.

The following charges are referred to in the opinion, as refused to plaintiff:

(5) I charge you, gentlemen, that the mere recording of a deed to a tract of land is not adverse possession of said land, and that the law does not require the owner of land to take notice of any deed purporting to convey his title which another may have recorded.

(19) The mere claim of a right or title to land not accompanied by actual possession of the same, no matter how long continued such claim of right and title may be, and no matter how loudly and vociferously or noisily and publicly the mere claim of right or title may have been made, it is not sufficient to cut off the right of entry in the true owner, and if the land be vacant, he may enter thereon without wrong, in safe defiance of any such mere claim of rights or title; nor is the right of recovery cut off by said claim of right or title; and if the person who makes such claim has not been in possession of the land actually for a sufficient time to cut off the title of the owner under the statutes of Alabama, he may maintain an action for recovery of the land no matter how long the payment has asserted his mere claim of right and title, and regardless of the publicity which may have been given to such mere claim of right and title.

(22) To acquire title by adverse possession under a void tax deed, the statute of limitations does not begin to run until actual possession is taken thereunder, and to be adverse the party setting up such adverse possession, and those through whom he or she claims, must have been in actual possession uninterruptedly during a continuous period of 3 consecutive years thereafter, and unless you believe from the evidence that actual possession was taken by defendant and her predecessor in title under the tax deed from the judge of probate to J. W. McQueen, and that such possession was continuous for a period of 3 consecutive years you must find for plaintiff for the northwest quarter of the northwest quarter, unless you further believe from the evidence that defendant and her predecessors in title under the deed of Charles F. Hard had 10 years of adverse possession to the said quarter section, and unless you believe from the evidence that defendant has acquired title by the statute of three consecutive years under a tax deed, or 10 consecutive years under color of title, your verdict should be for plaintiff for said quarter section.

The plaintiff excepted as follows, to the oral charge of the court:

Everywhere the court says adverse possession must be continued for a period of 10 years because it does not say consecutive period of 10 years, or 10 years consecutively. And in each case we except where the court sets out the elements of adverse possession because the court failed to use the word "hostile."

Theo J. Lamar, of Bessemer, for appellant. Huey & Welch, of Bessemer, for appellees.

SOMERVILLE, J. Plaintiff showed a good paper title to the land sued upon, and the issue turned upon the sufficiency of defendant's adverse possession to acquire a new and superior title.

It does not appear that any of the grantors or grantees in the chain of title which defendant claimed through George Smith, except Smith himself, ever had any possession, or exercised any act of ownership over the land. And Smith's possession of 18

months ceased about 1886. Defendant's claim, therefore, depends entirely upon her own acts of possession since her purchase in 1902.

[1] A document offered as color of title is relevant and admissible in evidence for that purpose only in connection with evidence of actual possession and claim thereunder by the grantee therein. National Bank v. Baker Hill Iron Co., 108 Ala. 635, 19 South. 47; Henry v. Frohlichstein, 149 Ala. 330, 43 South. 126. Hence all of the color of title deeds, except the deeds from Hard and McQueen directly to defendant, should have been excluded upon the objection and motion of plaintiff.

The charges given at the instance of defendant all state correct propositions of law, often declared, and need not be noticed in detail. If some of them were misleading, as suggested by counsel, explanatory charges should have been requested.

[2] Charge 4, refused to plaintiff, "that, as the defendant is claiming the land sued for under two separate deeds, any possession which may have been shown as to either of the 40 acres in quarter section cannot bar plaintiff's right to recover the other quarter section," seems to be intended to assert the proposition that where a grantor executes two separate deeds to the separate parts of a tract to the same grantee, possession of either one of the tracts is not to be extended to the other, as would be the case if both tracts had been otherwise. But it is not material here, since the requested instruction ignores the fact that defendant was claiming, not only under the two separate deeds, of even date, from Chas. F. Hard, but also under the quitclaim to both 40's from J. W. McQueen. It was therefore, in any case, properly refused.

[3-5] Refused charges 5 and 19 state obviously correct propositions of law, and their refusal was error. It does not appear that they were substantially covered by any part of the court's oral charge, or any written charge, and hence we cannot say that their refusal was aught but prejudicial.

[6, 7] The other special charges requested by plaintiff (except 22) were properly refused, either as being misleading, argumentative, or as ignoring parts or phases of the evidence. Charge 22 states the law correctly as to the limitation of 3 years by adverse possession under tax deeds. But it was refused without error, in view of the fact that defendant was not invoking such a limitation, and the trial judge had instructed the jury that defendant could defeat plaintiff's title only by an adverse possession under any of her deeds for 10 years, an instruction far more advantageous to plaintiff than the special charge referred to.

[8] Where an instruction requires that adverse possession must be continuous for 10 years it is not necessary to also say that the 10 years must be consecutive. Hays v. Lemoine, 156 Ala. 465, 47 South. 97, declared a charge bad for the omission of the latter term, but its practical synonym "continuous" was there omitted also.

[9] So where, in defining adverse possession by a statement of its various elements, the term "hostile" is omitted, but the possession itself is required to be adverse, the omission is not per se erroneous, but should be corrected by an explanatory charge, further explaining the meaning of the term "adverse."

We find no reversible error in the parts of the oral charge excepted to.

As the facts will be tried again by a jury, we refrain from any ruling upon the sufficiency of defendant's adverse possession as against plaintiff's request for general affirmative charges in her favor upon that issue. See, however, the following cases, which are more or less in point: Brannan v. Henry, 175 Ala. 454, 57 South. 967; Bass v. Jackson Lumber Co., 169 Ala. 455, 53 South. 800; Owen v. Moxon, 167 Ala. 615, 52 South. 527; Chastang v. Chastang; 141 Ala. 451, 37 South. 799, 109 Am. St. Rep. 45; McCreary v. Jackson Lumber Co., 148 Ala. 247, 41 South. 822; Alexander v. Savage, 90 Ala. 383, 8 South. 93; Farley v. Smith, 39 Ala. 38.

For the errors noted the judgment will be reversed, and the cause remanded for another trial.

Reversed and remanded.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.

### On Rehearing.

SOMERVILLE, J. [10] One of the tracts in said suit was purchased from the government, on or before March 15, 1837, by Arthur McFall, to whom a patent was issued on September 20, 1839. It is contended that, as the patentee's deed to plaintiff's ancestor was made on September 24, 1838, it passed no title to him. It does not appear whether the entryman had made final payment before his alienation of the land, but, whether he had or not, his warranty deed carried to his grantee the legal title afterwards acquired by patent.

[11-13] The deed from Arthur McFall to Wm. McFall appears to have been signed by mark, and was acknowledged before a Mississippi justice of the peace, without formal attestation. Without proof of the official authority of the certifying officer, this deed was not entitled to registration. Clay's Dig. 'p. 153, § 8. But since there was no law, prior to the Code of 1852 (section 1266) requiring the attestation by two witnesses of a deed signed by mark (Hendon v. White, 52 Ala. 597, 603), this deed was prima facie validly executed; and, under the provisions of sections 3382 and 3374 of the

Code of 1907, a certified transcript of its record dispensed with proof of its execution. Indeed, we do not find that defendant in any way objected to its admission.

[14] There is no merit in defendant's contention that there was a variance between the complaint and the evidence, in that the complaint alleges prior possession in plaintiff and the proof shows only a constructive possession by virtue of documentary title. Prior constructive possession has always been deemed sufficient to authorize a recovery in statutory ejectment, when supported by the paramount legal title. The broadening of the form of the complaint effected by section 1530 of the Code of 1896 (see Jackson v. Tribble, 156 Ala. 480, 47 South. 310), so as to permit an allegation either of prior possession or of legal title, was obviously not intended to change the established conception of prior possession as being either actual or constructive, and it cannot be given that effect.

The petition for rehearing must be overruled.

ANDERSON, C. J., and MAYFIELD and THOMAS, JJ., concur.