52 So.2d 207

**MILLICAN et al. v. MINTZ.**

**7 Div. 64.**

Supreme Court of Alabama.

March 29, 1951.

Rehearing Denied May 10, 1951.

Merrill, Merrill .& Vardaman, of Annis-, ton, for appellants.

Ross Blackmon, of Anniston, for appellee.

FOSTER, Justice.

This is an action in ejectment in two counts. The case has been here twice before as reported in 248 Ala. 683, 29 So.2d 230, and 251 Ala. 358, 37 So.2d 425.

On the last trial the case went to the jury on counts A and B. Count A is for the recovery of a strip of land which may be briefly referred to as the north 179 feet of S.E.¼ of the S.E.¼ of Section 22, Township 13, Range 7 East. Count B is for the recovery of what may be referred to as the north 46 feet and four inches of the N.W.¼ of the S.E.¼ of Section 22, Township 13, Range 7 East. This particular count specifically refers to the land as being in the N.W.¼ of the S.E.¼ of said section, township and range. While count A does not specifically state that the strip of land is in the S.E.¼ of the S.E. ¼, the description which is contained in the count shows that it is necessarily in that quarter section.

The plaintiff, who is the appellee here, has paper title conveying to him the N.E. ¼ of the S.E.¼ and the S.½ of the S.W. ¼ of the N.E.¼. It may be observed that the last described twenty acres lie immediately north of the N.W.¼ of the S.E.¼ and also that the N.E.¼ of the S.E.¼ of which the plaintiff has paper title lies immediately north of the S.E.¼ of the S.E.¼. The evidence shows that the plaintiff has no paper title to either of the tracts sued for. It therefore follows that his right to recovery in this case depends entirely upon an application of the statute of limitations and adverse possession.

The evidence shows there has arisen a dispute with respect to the boundary line between the N.E.¼ and the S.E.¼ of the S.E.¼ and between the S.W.¼ of the N.E.¼ and the N.W.¼ of the S.E. ¼. It seems there were two old surveys of this land whereby the location of those two dividing lines was placed at approximately the south lines of the two tracts of land sued for. Those surveys also extended to the east, the dividing line between the N.E.¼ and the N.W.¼ of the S.E.¼ of said section, township and range, as that line has recently been located by what is called the Lee survey, and the location of that line is not here in controversy. The old survey located that line onto the lands of the plaintiff and located the other controverted lines on the quarter sections owned by the defendant. The Lee survey, which is the more recent in point of time, is the one which caused the controversy between the parties, but the descriptions of the tracts of land sued for in the complaint are consistent with the correctness of that survey.

There was a jury and verdict for the defendant in the case, and the plaintiff made a motion for a new trial which was granted. The appeal is taken by the defendant from that judgment. The theory argued by counsel, upon which the court must have acted in granting said motion for a new trial, was that the verdict of the jury was contrary to the great weight of the evidence. We will therefore consider the question from that standpoint.

Before reviewing the substance of the evidence material to that issue, we wish to refer to certain principles of law which have application, stated as follows. Where plaintiff in ejectment relies on title by adverse possession, he has the burden of showing the legal title based upon such possession. McCreary v. Jackson Lumber Co., 168 Ala. 208, 53 So. 103.

A witness may testify that a person was in possession of the land and continued in such possession. This being merely the statement of a collective fact. Woodstock Iron Co. v. Roberts, 87 Ala. 436, 6 So. 349; Steed v. Knowles, 97 Ala. 573(5), 12 So. 75; Cooper v. Slaughter, 175 Ala. 211 (13), 57 So. 477; McCraw v. Lindsey, 209 Ala. 214(4), 95 So. 898.

On cross examination a witness who has testified as to the possession of land by another in such general terms may be questioned as to the basis of such statement, and if his testimony shows that it was based upon facts which are not sufficient to support possession such general statement will yield to the particulars as testified to by the witness.

It has been held by this Court that where a witness has enumerated certain possessory acts of another, not in themselves sufficient to show actual possession, but not shown to be the only possessory acts performed, and testified further that at the time plaintiff's ancestor conveyed the land he was in possession of it, whether or not he was in possession was a question to be submitted to the jury. McCreary v. Jackson Lumber Co., 148 Ala. 247, 41 So. 822(1).

Such possession in order to ripen into title after the required length of time must be more than a mere claim of ownership. A claim of ownership or an intention to assert title against the true owner is of no consequence in the absence of demonstrations by acts done upon the property leaving there indicia of a continued possession. Rucker v. Jackson, 180 Ala. 109(11), 60 So. 139; Odom v. Averett, 248 Ala. 289, 27 So.2d 479. Such acts of possession and other evidence to make it adverse and which will ripen into title

must be sufficient to prove that the possession has been actual, exclusive, open, notorious, hostile and continuous for a period of ten years in the party making such claim. McCreary v. Jackson Lumber Co., supra (6); Kidd v. Browne, 200 Ala. 299(6), 76 So. 65.

■ We have applied those principles to controversies where the question related to a boundary dispute. Brantley v. Helton, 224 Ala. 93, 139 So. 283; Barbaree v. Flowers, 239 Ala. 510, 196 So. 111; Branyon v. Kirk, 238 Ala. 321, 191 So. 345; Duke v. Wimberly, 245 Ala. 639, 18 So.2d 554. The same principles apply so far as actual possession is concerned whether it relates to a boundary line dispute or any other dispute as to the title. Tensaw Land and Timber Co. v. Rivers, 244 Ala. 657, 15 So.2d 411.

■ The question which confronts us is whether the trial judge was justified in his conclusion that the verdict of the jury was contrary to the great preponderance of the evidence. Section 276, Title 7, Code. There was but one issue of fact which was subject to his consideration. That was whether the plaintiff Mintz had actual adverse, hostile, exclusive and continuous possession of the controverted strips of land for as much as ten years prior to the institution of the suit by him. The plaintiff acquired the N.E.¼ of the S.E.¼ and the S.½ of S.W.¼ of N.E.¼ of Section 22, Township 13, Range 7 East by deed executed by the register of the circuit court, in equity, on April 23, 1930. The sale was made under a decree of the circuit court, in equity, dated February 10, 1930, for the purpose of making partition between tenants in common. The sale did not include, in so far as the description shows, either of the tracts in controversy. So that the duty was imposed upon the plaintiff Mintz of showing that he acquired the legal title to one or both of such tracts by adverse possession.

The appellant Millican, who was the defendant below, was shown to have purchased the S.E.¼ of the S.E.¼ and the N.W.¼ of the S.E.¼ of Section 22, Township 13, Range 7 East on January 19, 1944, from one Brock who had himself purchased it in 1940 from one Propst. Propst bought it in 1939 from one Welch, and Welch bought it from W. M. Anderson, executor of C. H. Mintz, in 1933.

This latter chain of title includes the two tracts of land involved in this suit. The evidence shows that when Propst bought the land he went to see Mintz and found him "down in the woods" and that they had a controversy about the line which was not pursued by Propst before he sold to Brock. When Millican purchased the land from Brock he pursued an inquiry to locate the true and correct line with respect to those forties and had some conversation with Mintz with respect to it. There is some testimony that Mintz admitted that the line as then located extended onto Millican's land. This was denied by Mintz. A few months after Millican purchased this land he had it surveyed by a surveyor named Lee who located the lines, as we have referred to them hereinabove. This survey was made in August 1945. Whereupon Millican proceeded to build a fence between the respective tracts. Soon thereafter, on September 20, 1945, this suit was begun. The evidence does not show that Millican or his predecessors in title had possession of the two controverted tracts prior to the time when Millican had the survey made and took possession under the survey.

Referring to the testimony which supports the contention of the plaintiff that he had possession of the two tracts for more than ten years prior to the institution of the suit, we find from the evidence of numerous witnesses in general terms that he took possession of those two tracts of land and had possession of them for over ten years, according to some of the witnesses, while others say for eighteen or twenty years, and plaintiff says from the time he obtained his title in 1930. The testimony of the witnesses fixed the time with reference to their examination and not to the time of the institution of the suit. Taking that view of their testimony, we think it means that they undertook to testify that Mintz has had possession for more than ten years prior to the institution of

the suit. The only evidence in the record which conflicts or contradicts in any respect their testimony was an admission by Mintz related in the testimony of Millican. This was denied by Mintz.

It is often true that when a witness testifies that he or some one has had possession of land for a certain length of time, the witness does not fully realize what is meant by his testimony. The witness under those circumstances often confuses the actual possession necessary to constitute title by adverse possession with a claim of ownership without understanding that a claim of ownership alone does not show actual possession of the land. As we have stated, the authorities require that such possession be actual, exclusive, adverse, hostile and continuous, to all other claims. A witness testifying in general terms may be called upon to specify the particular acts which he considers constitute the possession about which he is testifying, and if his testimony shows that the facts upon which he relies to support his statement as to possession are not sufficient to show that the possession is actual, his general statements of possession will yield their influence to the particulars of which he testifies, and if those particulars are insufficient, as we have stated, then the testimony of the witness upon which reliance is had to sustain a claim of adverse possession fails to meet the requirements of law. But when such witnesses are not called upon to give the details constituting the indicia of actual possession necessary to constitute adverse possession, their testimony to the effect that a party has been in possession of the land over a period of years carries with it weight as evidence to that effect. There was no such explanatory evidence produced on cross examination or otherwise.

Evidence that Mintz has been in possession of the land for ten years is not sufficient by itself to constitute proof of the hostility, notoriousness and exclusiveness which are necessary to create title by adverse possession. Kidd v. Browne, supra; 2 Corpus Juris Secundum, Adverse Possession, § 227, p. 841, et seq. Such evidence will only sustain one element of adverse

possession, that is, the fact of possession; but the evidence must sustain all of those elements. Evidence by the witnesses as to the possession of Mintz shows that the witnesses intended to testify that such possession has been under claim of right extending to the Morton line. They also testified to facts showing that the claim has been notorious and under a deed which he thought conveyed land extending to said line, and that this possession has been continuous by plaintiff since he received his deed in 1930, about fifteen years before the defendant Millican went upon it and built a fence on the Lee line. There was no conflict as to those matters. Hopkins v. Duggar, 204 Ala. 626(3), 87 So. 103; Shepherd v. Scott's Chapel, 216 Ala. 193, 112 So. 905. So that if the acts of possession by Mintz were sufficient to show actual possession, we think the great preponderance of the evidence showed a claim in good faith to the Morton line in hostility to all other claimants and continuing for a period of fifteen years. Such being the great preponderance of the evidence, the court was justified in granting the motion for a new trial.

Affirmed.

LIVINGSTON, C. J., and LAWSON and STAKELY, JJ., concur.