68 So.2d 702

**MILLICAN et al. v. MINTZ.**

7 Div. 155.

Supreme Court of Alabama.

Nov. 19, 1953.

Merrill, Merrill, Vardaman & Matthews, Anniston, for appellants.

Ross Blackmon, Anniston, for appellee.

SIMPSON, Justice.

Statutory action in the nature of ejectment by plaintiff Mintz against defendants Millican.

This court has previously considered this case three times. Mintz v. Millican, 248 Ala. 683, 29 So.2d 230; Millican v. Mintz, 251 Ala. 358, 37 So.2d 425; Id., 255 Ala. 569, 52 So.2d 207. There was satisfactory evidence to establish that the plaintiff had been in adverse possession of certain lands for the required number of years so as to ripen into title. Regrettably, however, due to the manifest uncertainty or inconsistency in the jury's verdict on which the judgment must rest—to be hereafter demonstrated— we, perforce, must order a reversal.

The plaintiff's amended complaint consisted of two counts. In the first of these he sought to recover a tract of land 179 feet in length by 1345 feet in width, described as being off the north side of the SE ¼ of the SE ¼ of Section 22, Township 13, Range 7 East; in his second count, the plaintiff sought to recover a tract of land 46 feet and 4 inches in length by 1345 feet in width, said land described as lying and being in the NW ¼ of the SE ½ of Section 22, Township 13, Range 7 East in Calhoun County, Alabama. The defend-

ant, pursuant to § 942, Title 7, Code 1940, made the suggestion that the suit arose over a disputed boundary line and described the true boundary line as being along certain quarter section lines as shown by a survey made by one Lee, hereinafter referred to as the Lee line.

Plaintiff in his first replication took issue with the defendant as to the location of the disputed boundary line. In the plaintiff's third replication, he alleged that one Morton had also surveyed this land; that the lines of this Morton survey traversed the old division lines between the quarter sections and that the coterminous owners had, for more than twenty years prior to the institution of the suit, recognized and acquiesced in the Morton line as being the true and correct line.

In replication eight (rather unintelligible from the calls given), the plaintiff alleged that approximately thirty-five years previously one McClellan surveyed the division line between the NE ¼ of the SE ¼ and the SE ¼ of the SE ¼; that said division line began on the east side of the SE quarter section on the north and south line separating the SE ¼ of the SE ¼ from the NE ¼ of the SE ¼, at a point on the north and south line north of the SE ¼ of the SE ¼ and extending thence west a distance of 1320 feet from the south line of the SE ¼; further that the coterminous owners have since such survey acquiesced in and conceded the correctness thereof and that the plaintiff had been in continuous and uncontested possession of the tract lying north of the McClellan survey for a period of from ten to forty years; hence the McClellan survey and land line was the true line, and the plaintiff further alleged that the survey of the defendants does not involve a section line established by the government.

In replication numbered 9, the plaintiff alleged that said Morton ran the east and west division line between the two quarter sections and confirmed the correctness of the McClellan survey.

In replication numbered 10, the plaintiff alleged that in 1930 he caused a survey to be made of the division line between the SW ¼ of the NE ¼ and the NW ¼ of the SE ¼ by Morton. Immediately thereafter he entered into possession of the land de-

scribed in Count 2 in pursuance of the survey as the correct line and has remained in the possession thereof. He further alleged that the Morton line is the true line.

The initial inquiry, therefore, is which outside quarter section line (the east section line of Section 22), the Lee line or the Morton line, is the true outside quarter section line as established by the government? And secondly, if the Morton line is not the outside quarter section line and different from that as established by the government, did the plaintiff acquire title to the land lying north of the Morton line by virtue of his adverse possession?

From a judgment in favor of the plaintiff, the defendant has appealed claiming, inter alia, error on the part of the trial court in overruling his motion for a new trial. One of the grounds for such was the alleged inconsistency in the jury's verdict, resulting in the plaintiff's securing certain lands which he did not sue for in his complaint or include in his description of his boundary line.

The verdict of the jury reads as follows:

"We the jury find the issues in favor of the plaintiff and fix the true boundary line between plaintiff's and defendant's property as follows: A line beginning at a point on the east line of Section 22, Township 13 south, range 7 east, 1153 feet north of the southeast quarter of said Section 22, running thence west 1345 feet to the west line of the southeast quarter of the southeast quarter of said section 22, thence north along said quarter section line to a point on the quarter section line dividing the northeast quarter of the southeast quarter from the northwest quarter of the southeast quarter 46 feet 4 inches South of the northeast corner of said northwest quarter of the southeast quarter, thence running west of equal width 1345 feet, more or less, to the west line of the said northwest quarter of the Southeast quarter thence running north along said quarter section line 46 feet four inches to the northwest corner of the said northwest quarter of the southeast quarter."

In order to illustrate the *locus in quo* as related to the description in the verdict, we are here reproducing a sketch copy of the Lee map with the Morton lines superimposed.

NW Corner, Section 22,
Township 13 S, Range 7 E

Broken line — Morton line SE Corner, Section 22
Solid line — Lee line

The evidence disclosed that Mr. Lee, a registered surveyor and engineer, secured a copy of the government field notes before running his survey; there is no evidence that Mr. Morton or Mr. McClellan had so done. Further, counsel for plaintiff admitted in open court the technical correctness of the Lee survey. Also the plaintiff's description of the tracts of land sued for in the amended complaint (i. e, "a strip of land off the *north* side of the *SE* ¼ of the *SE* ¼") is consistent with the correctness of the section lines known as the Lee line and found in the Lee survey, and inconsistent with the section lines known as the Morton line for the reason that if the plaintiff had relied on the Morton line as being the true government section line, as contended by him to be the correct line, the tract of land he was suing for would be found in and described as being off the *south* side of the *NE* ¼ of the SE ¼. Lastly, the plaintiff offered the Lee map into evidence for the purpose of proving that the description of the tracts sued for in the complaint was correct.

If it be assumed, therefore, that the jury found the Lee line to be the true government outside section line (or that by plaintiff's admission in open court he conceded this to be so—which we think he did) in tracing the boundary line fixed by them, the point of beginning ("a point on the east line 1153 feet north of the SE quarter") would be found on the *Lee* section line; "thence west 1345 feet to the west line of the SE quarter of the SE quarter" would give the plaintiff all that land lying north of this line; the "west line of the SE quarter" being that west line as found by Lee. This is consistent with the plaintiff's amended complaint, but wholly inconsistent with his claim as to the true line as the issue was presented by his replications to the defendant's plea of suggestion. This for the reason that the Morton line does not run all the way out to the west line (as found by Lee) of the SE quarter of the SE quarter, but stops approximately 25 feet east thereof. The plaintiff, by his replication, alleged the Morton line to be the true line. Also, the plaintiff's evidence showed possession and claim only of that land north of

the Morton line, and there was no evidence of any possession of land west of the Morton line. Therefore, upon the original assumption that in the jury's verdict their point of beginning was the Lee line, the verdict of the jury in fixing the boundary gave to the plaintiff a tract of land approximately 25 feet in width and 179 in length in the NW corner of the SE ¼ of the SE ¼ (section lines as shown by Lee) more than that shown by the replication and the evidence to be claimed in the suit.

If, however, the point of beginning in the jury's verdict and the section lines to which they refer are the Morton section lines, in tracing the Morton line to "a point on the quarter section line dividing the northeast quarter of the southeast quarter from the northwest quarter of the southeast quarter 46 feet 4 inches *South* of the *northeast* corner of said *northwest* quarter of the southeast quarter, thence running west of equal width 1345 feet * * * to the west line of the said northwest quarter of the Southeast quarter thence running north along said quarter section line 46 feet 4 inches" (emphasis added), the plaintiff would receive a tract of land approximately 46 feet 4 inches in width by 1345 feet in length in the NW ¼ of the SE ¼ (section lines as shown by Lee) which he in no wise claimed and which land is shown by the *Morton* line to be off the north side of the NW ¼ of the SE ¼.

██ The above points were raised below by the defendant in his motion for a new trial and perhaps otherwise; the appellant defendant now assigns and argues as error the refusal to grant him a new trial. Manifestly, we think the verdict of the jury was so uncertain or inconsistent as to make a judgment rendered thereon impossible of execution.

██ A verdict must be responsive to the issue, must be supported by the evidence, and in ejectment actions must furnish plain data for any action required of the sheriff. Livingston v. Nelson, 200 Ala. 507, 76 So. 449. It is equally established that in a suit to determine boundaries, the description of the boundary in the verdict "must not leave to the sheriff's ascertainment in executing the writ the effect of

evidence or the decision of any question of fact." Lessley v. Prater, 200 Ala. 43, 75 So. 355, 356; Riddle v. Hanson, 208 Ala. 474, 94 So. 729. Further "a verdict in ejectment by which the lands sued for cannot be identified by construing it in the light of the pleadings, without resort to extrinsic evidence, is too uncertain to support a judgment." Bradford v. Sneed, 174 Ala. 113, 56 So. 532.

From what we have said, it is obvious that the verdict of the jury in this case is uncertain to the point of leaving complete discretion to the sheriff as to the point of beginning, the Morton line or the Lee line.

It results the judgment of the lower court cannot stand.

Reversed and remanded.

LIVINGSTON, C. J., and GOODWYN and CLAYTON, JJ., concur.