92 So.2d 897

Dovie PARRISH et al.

v.

Ida DAVIS.

4 Div. 793.

Supreme Court of Alabama.

Feb. 21, 1957.

---

J. A. Carnley, Elba, for appellants.

J. C. Fleming, Elba, for appellee.

GOODWYN, Justice.

The appellee brought a statutory ejectment action in the circuit court of Coffee County to recover the following tract of land:

"Al that portion of SE¼ of SW¼, Section 15, Township 3, Range 19, lying east of Pea River, in Coffee County, Alabama."

The facts material to an understanding of the questions presented are as follows:

The SE¼ of the SW¼ of Section 15 is split roughly in half by the Pea River. The land involved here is that portion of the forty lying along the east side. The area appears to be entirely swamp and woodland. None of it has been under cultivation.

Plaintiff's evidence tends to show that the disputed area was part of a large tract of land owned by her grandfather, Hosea Holley. For the purpose of showing title in her grandfather, she placed in evidence a deed from one Wiggins to Hosea Holley executed in 1843. Hosea Holley died intestate (the exact time of his death is not shown) and all of the lands which he owned passed to plaintiff's mother as his sole heir. Upon the mother's death intestate (the exact time of her death is not shown), the land descended to her children in equal undivided shares. Mrs. Ida Davis, the plaintiff, is one of the children. For some time after the mother's death the whole tract remained intact and was administered on behalf of all the heirs as the "Holley Estate". In 1923 the bulk of the estate was apportioned among the mother's heirs, but the land now in dispute was not included in the division. Thus, all of the heirs continued as joint owners of the disputed area until 1950 when other heirs (it is not clear whether all) joined in conveying their interest in the property to the plaintiff. The general tenor of the plaintiff's evidence indicates that she and those under whom she claims have maintained possession of the disputed land, and treated it as their own for a period exceeding 50 years. From the testimony of witnesses on both sides, it appears that the common understanding in the community was that the disputed area had always been a part of the Holley lands.

The evidence submitted by defendants tends to show the following: The defendants, M. K. Parrish and Dovie Parrish, are husband and wife. Dovie Parrish and her children are the unquestioned owners of the portion of the SE¼ of the SW¼ of Section 15 which lies across the river from the disputed area. The contention is that they

own the entire forty, their title to the disputed area being based on a chain of five duly recorded deeds dating from 1881. The first three deeds in this chain of title definitely purported to convey the entire forty, as contended by defendants, without mention of the Pea River which bisects it. The entire forty, including the disputed area, was included in a deed to J. W. Parrish executed in 1904. In 1913 J. W. Parrish executed a deed to his son, M. K. Parrish, conveying the following described property:

"SE¼ of SW¼ of Sec. 15 T–3 Range 19 Pea River being a line of said Forty on the east side, Taking a small strip on the north side to make out the said Forty, containing forty acres more or less, situated, lying and being in the County of Coffee and State of Alabama."

When M. K. Parrish later conveyed the property to his wife, Dovie Parrish, and children in 1932 the deed contained the same description.

Judgment was rendered in favor of plaintiff, from which judgment the defendants prosecute this appeal.

Appellants' insistence here is (1) that error was committed in receiving in evidence the deed from Wiggins to Hosea Holley because it was impossible, due to its disintegrated condition, to read in it any description of the disputed land, and (2) that the judgment was against the weight of the evidence.

(1)

 The Wiggins deed was sent up with the record for inspection by this court. The purpose of introducing this deed in evidence was to show a conveyance of the disputed land to plaintiff's ancestor in title, her grandfather, who was the grantee in the deed. We agree that parts of it have been completely obliterated and that there is nothing to show that the conveyance actually included the disputed area. However, we do not think the introduction of the deed was error to reverse. Since the deed does not include the disputed area it has no relevancy to the case, but, clearly, the defendants were not prejudiced by its introduction in evidence. Under the facts of this case it was not essential that plaintiff show title in her grandfather, Hosea Holley, in order to recover.

(2)

 Trial of the case was had before the court without the intervention of a jury. Part of the evidence was heard orally and part of it was in the form of recorded testimony taken at another trial which was introduced in the instant case by stipulation of the parties. In this situation our review is guided by the settled rule that the finding of the trial court, when testimony is taken orally before it, or partly so, has the effect of a jury's verdict and will not be disturbed on appeal unless plainly and palpably wrong. Haden v. Boykin, 259 Ala. 504, 66 So.2d 708; Gardiner v. Willis, 258 Ala. 647, 64 So.2d 609; Aiken v. Barnes, 247 Ala. 657, 25 So.2d 849; Taylor v. Burgett, 207 Ala. 54, 91 So. 786. The question being fairly debatable and neither conclusively proved nor disproved, this court, under our settled rule, will not substitute its own judgment for that of the trier of facts at nisi prius, who is charged with the primary duty and responsibility of determining factual issues. Forest Hill Corporation v. Latter & Blum, 249 Ala. 23, 29, 29 So.2d 298. We have given careful consideration to the evidence and are convinced that it amply supports the trial court's conclusion.

 Plaintiff made out her prima facie case for recovery by introducing the 1950 deed to her from other Holley heirs who were shown to have been in possession. Wetzel v. Toston, 248 Ala. 382, 383, 27 So. 2d 629; Blair v. Blair, 199 Ala. 480, 481, 74 So. 947. The defendants then introduced a chain of five deeds, duly recorded prior to the 1950 deed to plaintiff, to show their title to the disputed land. As already noted,

the first three of these deeds definitely purported to convey the disputed tract, while the last two deeds did not include the disputed area in the description of the property conveyed. The effect of defendants' evidence was to show that the record title to the disputed land remained outstanding in J. W. Parrish, not a party to this action. Hence, plaintiff's right to recover depends upon whether she has acquired title by adverse possession.

■■ Code 1940, Tit. 7, § 828, provides that "adverse possession cannot confer or defeat title to land unless the party setting it up shall show that * * * he derives title by descent cast, or devise from a predecessor in the title who was in possession of the land." "Descent cast" under this statute means simply that when one dies in possession of land and possession is continued by his heirs, the possession of the heirs corresponds to the holding of possession under color of title although the ancestor had no color of title. White v. Williams, 260 Ala. 182, 69 So.2d 847; Jones v. Mitchell, 258 Ala. 651, 64 So.2d 816; Childs v. Floyd, 194 Ala. 651, 70 So. 121; Childs v. Floyd, 188 Ala. 556, 66 So. 473; Jordan v. Smith, 185 Ala. 591, 64 So. 317; 1 Am.Jur., Adverse Possession, § 195, p. 901; 2 C.J.S., Adverse Possession, § 79 b., p. 623; 2 C.J., Adverse Possession, § 399, p. 198. See Blackstone's Commentaries, Book 3, Chap. 10, pp. 176–178. In Jones v. Mitchell, [258 Ala. 651, 64 So.2d 820] supra, it was said: "The possession cast by a trespasser to a descendant is no better in him than that of the ancestor, but it may be sufficient to allow a claim of adverse possession for a period of ten years thereafter under the restrictions of that statute." The evidence sufficiently shows, we think, that plaintiff's grandfather, Hosea Holley, at the time of his death was in possession of the disputed land, claiming ownership; that upon his death plaintiff's mother entered into possession claiming ownership as his sole heir until her death, and that upon the mother's death her children, including plaintiff, entered possession claiming ownership as her heirs. Thus the mother and her children both derived title by descent cast which, when coupled with the necessary elements of adverse possession for the prescribed period, would be sufficient under the statute to establish title in them by adverse possession. The question, then, is whether the evidence sufficiently shows their "possession" to have been "adverse" for the statutory period of ten years. Code 1940, Tit. 7, § 20; Rowe v. Bonneau-Jeter Hardware Co., 245 Ala. 326, 332, 16 So.2d 689, 158 A.L.R. 1266; Van Antwerp v. Van Antwerp, 242 Ala. 92, 101, 102, 5 So.2d 73.

■ "'In order for a party to establish a title to land by adverse possession, it must be shown that for a period of ten years he or those under whom he claims held hostile possession under a claim of right; that it was actual, exclusive, open, notorious, and continuous.'" Millican v. Mintz, 255 Ala. 569, 571, 52 So.2d 207; Alexander City U. W. & S. Co. v. Central of Ga. Railway Co., 182 Ala. 516, 520, 62 So. 745, 747; McCreary v. Jackson Lumber Co., 148 Ala. 247, 251, 41 So. 822.

■ It would serve no useful purpose to set out in detail the evidence as to each of the elements necessary to ripen title in plaintiff by adverse possession. Suffice it to say that it appears the Holley family, for a period of over fifty years, treated the disputed land as their own, and during that time exercised the usual possessory acts consistent with ownership of land of that nature. They mortgaged it, they sold the timber from it twice, they periodically rode over it and looked after it, they required a neighboring property owner to remove an encroaching fence, and finally other members of the family undertook to give the plaintiff a warranty deed to the disputed land. It also appears clear that the possession of the Holleys was open, notorious and continuous for more than 50 years. And there is ample basis in the evidence for

**526**

concluding that the Holleys' possession during all this time was exclusive, although the defendant testified to some desultory possessory acts, such as an occasional walk over the disputed land and allowing his hogs to cross the river and pasture there. The undisputed evidence shows that from the time of the death of the plaintiff's grandfather sometime prior to 1891 until parts of the Holley estate were apportioned among the individual heirs in 1923, the disputed area was bounded on three sides by lands of the Holley estate, and that the disputed land was never separated from the adjoining Holley lands by any fence or boundary markings. The testimony of witnesses on both sides indicates that the Holleys have always treated the disputed area as an integral part of their lands, and that it was the common belief in the community that all of the land lying East of the river belonged to the Holley estate.

The defendant M. K. Parrish claims title by virtue of a deed from his father. As already noted, this deed recites that the Pea River forms the East line of the Parrish forty, clearly indicating, it seems to us, that the father had notice of the Holleys' claim to the portion of the forty lying across the river and even acquiesced in it.

Although it is not clear whether all of the Holley heirs joined in the deed to plaintiff, that situation does not bar her from maintaining the instant suit. "A tenant in common is entitled, as against a stranger in possession, to the whole property, and may recover from such stranger the whole in ejectment." Reichert v. Jerome H. Sheip, Inc., 204 Ala. 86, 89, 85 So. 267, 268; Hooper v. Bankhead & Bankhead, 171 Ala. 626, 631, 54 So. 549.

The judgment is affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.