97 So.2d 769

**Era L. MINTZ**

v.

**Lola Mae Cox MILLICAN et al.**

7 Div. 272.

Supreme Court of Alabama.

Oct. 24, 1957.

480

Ross Blackmon, Anniston, for appellant.

Merrill, Merrill, Vardaman & Matthews, Anniston, for appellees.

GOODWYN, Justice.

This is a statutory action in the nature of an action in ejectment (Code 1940, Tit. 7, § 938; Tit. 7, § 223, Form 32) brought by appellant, Era L. Mintz, in the circuit court of Calhoun County against appellee, Lola Mae Cox Millican, in which defendant Millican filed her suggestion in writing that the suit arises over a disputed boundary line (Code 1940, Tit. 7, § 942). The land involved is a strip 179 feet by 1,320 feet along the North line of the SE ¼ of the SE ¼ of Section 22, Township 13, Range 7 East, in Calhoun County.

This is the fifth time this case has been before this court. The prior appeals are reported as follows: Mintz v. Millican, 248 Ala. 683, 29 So.2d 230; Millican v. Mintz, 251 Ala. 358, 37 So.2d 425; Millican v. Mintz, 255 Ala. 569, 52 So.2d 207; Millican v. Mintz, 260 Ala. 22, 68 So.2d 702. We see no necessity of detailing here the points dealt with on the other appeals.

. The jury returned a verdict in favor of defendant Millican. The plaintiff's motion for a new trial being overruled, he brought this appeal.

There are 34 assignments of error, many of which are either expressly waived or not insisted upon. Our decision will be limited to those properly presented for review.

The record, on first consideration, presents a seemingly unending complex pleading situation. However, after considerable time spent in reading and rereading it, we are at the conclusion that the two principal issues presented for review on this appeal are as follows: (1) Whether the plaintiff (Mintz) has acquired title to the strip of land by adverse possession, and (2) whether he is entitled to the strip under the principle that "if two owners of adjacent lands agree on a division line between tracts of land, and each holds possession for ten years, claiming to said line, the title becomes perfect without regard to the true location of the boundary line between them." Isaacks v. Clayton, 254 Ala. 450, 451, 48 So.2d 536, 537.

Plaintiff's complaint, as it went to the jury, consisted of amended Count A, seeking recovery of the following lands:

"A strip of land 179 feet long by 1320 feet in width off the north side of the SE ¼ of the SE ¼ of Section 22, Township 13, Range 7 East, Calhoun County, Alabama, being more particularly described as follows:

"Beginning at a point 1,153 feet north of the SE Corner of the SE ¼ of the SE ¼ of Section 22, Township 13, Range 7 East, and extending thence west 1,320 feet to the west line of the SE ¼ of the SE ¼ of said section, township and range; thence north along said west line a distance of 179 feet; thence east a distance of 1,320 feet to the east line of the said SE ¼ of the SE ¼ of said Section 22; thence south along the east line of said

SE ¼ of the SE ¼ a distance of 179 feet to the point of beginning; * * *"

The defendant, in suggesting that the suit arises over a disputed boundary line, describes the location of the true line as follows:

"* * * that the true boundary line between plaintiff's and the defendant's property commences at the southeast corner of Section 22, Township 13, Range 7 East, which said point is marked by a pine knot and pile of rocks, and from thence running north along the easterly line of said section a distance of 1332 feet to the quarter section line, from thence deflect to the left so as to form an interior angle of 89 degrees 40 minutes, and parrallel with the south line of said section a distance of 1345 feet to the northwest corner of the southeast ¼ of the southeast quarter of said section, from thence deflect to the right so as to form an interior angle of 89 degrees 40 minutes, running in a northerly direction along the west line of the northeast quarter of the southeast quarter a distance of 1332.5 feet to a point in a sedgefield, thence deflect to the left so as to form an interior angle of 89 degrees 40 minutes and run in a westerly direction down the north line of the northwest quarter of the southeast quarter a distance of 1345 feet to the center of said section, thence deflect to the right so as to form an exterior angle of 89 degrees 40 minutes and run in a northerly direction along the center line of the said section 22, a distance of 1332.5 feet to the northeast corner of the southeast quarter of the northwest quarter; all according to the original government survey. A survey showing the boundary as hereinabove described, prepared and certified by E. H. Lee and dated August 25, 1945, is attached hereto and made a part hereof, with the usual leave of reference."

It is to be noted that defendant's description of the true line includes portions not now before us. We are concerned only with the boundary line between the NE ¼ of the SE ¼ and the SE ¼ of the SE ¼, Section 22.

For a better understanding of the situation we reproduce, in the rough, the following portion of the Lee map:

of the averments contained in his written suggestion concerning the location of the disputed boundary line".

In Replication No. 5 plaintiff avers that "he has been in possession of the strip of land described in Count A of his amended complaint for a consecutive and continuous period of more than ten years next preceding the filing of this suit of ejectment"

The plaintiff filed ten separate replications to the defendant's suggestion of a boundary line dispute. Only numbers 1, 5, 6, 7 and amended No. 8 are before us.

In Replication No. 1 the plaintiff took issue with the defendant "as to the truth

and that "his possession thereof during said period has been hostile under a bona fide claim of ownership, actual, open, notorious, exclusive, and continuous for said period of ten years under claim of right next preceding the filing of his suit

in ejectment against the defendant in this cause."

In Replication No. 6 he avers that he and his predecessors in title have been in continuous adverse possession of the strip of land sued for as described in Count A for a period of 20 years next preceding the filing of the suit in this cause.

In Replication No. 7 it is alleged that plaintiff's predecessors in title had been in adverse possession of the strip of land "for a period of from 30 to 60 years next preceding the filing of his suit * * * in this cause."

Amended Replication No. 8 is as follows:

"The plaintiff says and avers that heretofore—approximately 35 to 40 years ago—one Bailey McClellan, then being the official county surveyor for Calhoun County, Alabama, ran and surveyed the east and west division line between the NE ¼ of the SE ¼ and the SE ¼ of the SE ¼ of Section 22, Calhoun County, Alabama, that said survey and division line began on the east line of said quarter section on the north and south line between the NE ¼ and the SE ¼ at the point separating the SE ¼ of the SE ¼ and the NE ¼ of the SE ¼, said lands lying and being in Section 22, of Calhoun County, Alabama, at a point on said north and south line 1153 feet north of the SE corner of the SE ¼ of Section 22, Township 13, Range 7, in Calhoun County, Alabama, as established by the Lee survey of said ¼ sections and extending thence west to the west line of the NS line of said ¼ section from said beginning point a distance of 1,320 feet of equal width from the south line of the SE ¼ of said Section 22, Township 13, Range 7. He avers that the true boundary line between the NE ¼ of the SE ¼ and the SE ¼ of the SE ¼ of said ¼ Section the property of the P. and D. is above set out. He further avers that the coterminous owners of the SE ¼ of the SE ¼ of

[sic] the NE ¼ of the SE ¼ of said Section 22, Township 13, Range 7, as aforesaid, have at all times since said surveying acquiesced in and conceded the correctness thereof, and that he and his predecessors in title have been in the bona fide continuous and undisputed and uncontested possession of the tract of land lying north of said Bailey McClellan survey as involved and described in Count A of the complaint sued on in this cause, for a consecutive period of from 10 to 40 years.

"Hence he avers that the said Bailey McClellan survey and land line created thereby constituted the true line at the time of the survey caused to be made by the defendants in this cause, which said survey of said defendants does not involve a section line established by the Government."

We have given most careful consideration to the evidence and are persuaded that the two questions, set out above, presented issues of fact for the jury's determination. While there was evidence from which the jury might have concluded the issues in favor of plaintiff, there was also evidence supporting the jury's finding in favor of the defendant. "When there is no evidence to support the verdict, it is clearly the duty of the court to grant a new trial; * * *. But, when there is evidence on both sides, or some evidence to support the verdict, it should not be set aside, because it may not correspond with the opinion of the court, as to the weight of the testimony, or because it is against the mere preponderance of the evidence. * * * (T)he decision of the trial court, refusing to grant a new trial on the ground of the insufficiency of the evidence, or that the verdict is contrary to the evidence, will not be reversed, unless, after allowing all reasonable presumptions of its correctness, the preponderance of the evidence against the verdict is so decided as to clearly convince the court that it is wrong and unjust." Cobb v. Malone & Collins, 92 Ala. 630, 635, 9 So. 738, 740. As said in Smith

v. Smith, 254 Ala. 404, 408, 48 So.2d 546, 548:

" * * * Verdicts are presumed to be correct and no ground of new trial is more carefully scrutinized or more rigidly limited, than that the verdict is against the evidence. * * * It is recognized by this court that when the presiding judge refuses, as here, to grant a new trial, the presumption in favor of the correctness of the verdict is strengthened. * * * "

We cannot say that the trial court erred in overruling the motion for new trial on the grounds that the verdict was contrary to the preponderance and great weight of the evidence.

The other assignments of error insisted upon relate to the giving of several requested charges for the defendant and to rulings on the admission of evidence.

■ The giving of charge 2, requested by defendant, was not error. The identical charge was approved in Veitch v. Hard, 200 Ala. 77, 79, 75 So. 405.

■ It was not reversible error to give defendant's requested charge 7. Whether the possession to a given location is adverse is one of intention. Barbaree v. Flowers, 239 Ala. 510, 512, 196 So. 111; Branyon v. Kirk, 238 Ala. 321, 325, 191 So. 345; Gibson v. Gaines, 198 Ala. 583, 585–586, 73 So. 929; McLester Building Co. v. Upchurch, 180 Ala. 23, 25–26, 60 So. 173.

■ The giving of defendant's charge 11 was not error. In Spradling v. May, 259 Ala. 10, 15, 65 So.2d 494, 498, it was said:

" * * * [O]ccasional acts of entry upon land and cutting timber or other desultory entries and acts over the land are not sufficient to show possession against the true owner so as to ripen into title by adverse possession. Green v. Marlin, 219 Ala. 27, 121 So. 19;

Williams v. Lyon, 181 Ala. 531, 61 So. 299; McCreary v. Jackson Lumber Co, 148 Ala. 247, 41 So. 822."

■ It is contended that error was committed in overruling plaintiff's objection to the following question directed to witness Welch (defendant's predecessor in title) on cross-examination, viz.: "Now, how many forties did you have there that joined Mr. Mintz?" The deed containing a description of the land owned by the witness had already been introduced by the plaintiff on direct examination. We do not see any error in allowing a cross-examination of the witness on evidence already introduced by the plaintiff.

■ Assignments of error 26 and 27 relate to the overruling of plaintiff's objections to questions directed to two of his witnesses on cross-examination. Since the questions were not answered no error could have resulted from the court's ruling.

Appellant's next assignment of error relates to the following testimony (on cross-examination of one of appellant's witnesses):

"Mr. Merrill: Your family used to own practically all of Section 22, didn't they?

"Mr. Blackmon: Object to that.

"The Court: Overruled.

"Mr. Blackmon: Except on the ground that it has been thoroughly established by the law that no evidence is material except as to the land in litigation—unless that is brought in the proceedings by the plaintiff."

A reading of the testimony, both before and after the question, shows that the purpose of the question was to draw from the witness the fact that both the witness and his father had at one time owned land on either side of the alleged Bailey McClellan line. Therefore, the question was not objectionable since obviously it was asked to test the witness' knowledge of the

McClellan line and to shed light on whether and when a survey had been made of the line between the two forties with which we are here concerned.

■ Appellant claims as error the action of the court in allowing appellee to question appellant as to whether he had assessed for taxation the strip of land sued for. While it is true that in a case involving a question as to boundaries between coterminous owners the statute (Code 1940, Tit. 7, § 828) prescribing the requisites to confer or defeat title to land by adverse possession (one of the alternate requisites being the annual listing of the land for taxation for ten years) is inapplicable (§ 828, Tit. 7, supra; Guy v. Lancaster, 250 Ala. 226, 228, 34 So.2d 10), we do not think reversible error was committed in overruling appellant's objection. Aside from any other consideration, the trial court charged the jury, in effect, that the question of assessing property and paying taxes thereon is not involved in a case of this kind.

Appellant argues that it was error to sustain an objection to the following question:

"Mr. Blackmon: Now, I want you to look as this jury and tell these twelve men if anybody in your lifetime has ever disputed the Bailey McClellan line except Millican and Deason?"

The court did not err in sustaining the objection to this question. The question, as phrased, was obviously too broad since it was not limited to the knowledge of the witness.

Appellant argues that the court committed error in allowing the surveyor to testify that he sent word to appellant that a survey was about to begin. We fail to see how this can be error to reverse, especially in view of appellant's testimony admitting that he received word that a survey was about to be run.

■ Appellant claims that the trial court erred in allowing appellee to introduce a map of the survey as run by Mr. Lee. The reason for such objection is that the map bears a dotted line referred to on the map as the "Morton Line." It is argued that failure to expunge this line from the map was reversible error. We cannot agree. In the first place, the line referred to as the "Morton Line" is located at the same place as the line referred to as the "Bailey McClellan line"; that is, appellant claims that the true line between the two forties is located 179 feet south of the Lee line. The dotted line (Morton line) shown on the map of the Lee survey is represented to be 179 feet below the Lee line, the exact place to which appellant is claiming. Therefore, we fail to see how it could be error for appellee to show on paper what appellant had been attempting to show by his own witnesses.

There being no error to reverse, the judgment appealed from is due to be affirmed.

Affirmed.

LIVINGSTON, C. J., and SIMPSON and COLEMAN, JJ., concur.